CHARLES G. LONG, *et al.* v. CHICAGO, ROCK ISLAND & PA-
CIFIC RAILWAY COMPANY.

(Filed September 5, 1905.)

CARRIERS—Dead Body, Mutilation of—Mental Pain and Anguish—
Damages. The parents of an infant child are not entitled, under
the law, to recover damages for mental pain and anguish occa-
sioned by the mutilation of the dead body of such infant.

(Syllabus by the Court.)

*Error from the District Court of Grant County; before
James K. Beauchamp, Trial Judge.*

*C. S. Ingersoll* and *W. H. C. Taylor,* for plaintiffs in
error.

*M. A. Low,* and *Mackey & Mackey,* for defendants in
error.

Opinion of the court by

BURWELL, J.: This is an action for damages against the
appellee. Charles G. Long and Minnie B. Long were the
parents of Mason Long, an infant son of thirteen years, who
died on April 12th, 1904. His parents desiring to bury him
in the family cemetery at Marshfield, Indiana, purchased
tickets for themselves, and also a ticket for the body of the
deceased from Pond Creek, Oklahoma, to that place, over the
defendant's line of road. The petition alleges that the de-
fendant, in placing the casket in the car, handled it in so
negligent and careless a manner that it fell on the ground,
thereby breaking the casket and outer box and mutilating and
disfiguring the body of their dead son; that the plaintiffs

were compelled to expend the sum of sixty-five dollars in Kansas City for the preparation of the body for burial, and to have the casket repaired; all of which was occasioned by the negligence of the defendant company; that, by reason of the negligent acts of the defendant, the plaintiffs suffered great mental distress. Judgment is prayed in the total sum of one thousand five hundred and sixty-five dollars. On the trial, the defendant offered to confess judgment for sixty-five dollars the amount of the actual damages, but objected to the introduction of any evidence as to mental suffering. The court sustained the objections. The jury returned a verdict for the sixty-five dollars, for which judgment was entered. The plaintiffs have appealed to this court. The record and briefs present the sole question as to whether or not a recovery can be had for mental suffering in a case of this kind.

The cutting, bruising or disfiguring of the dead body of a child could not fail to cause great mental distress to those responsible for its existence, and whose hopes have been disappointed by its loss. Indeed, language is incapable of conveying the pain and anguish that such an act would produce in the mind of a tender and loving parent. But when done either maliciously or negligently, the injury is one for which the law has failed to provide compensation in dollars and cents, and in announcing this rule, we have not overlooked the declarations to the contrary by some courts of high standing. These decisions, however, indicate an effort to interpolate into the law for the punishment of a wrong, a remedy at the sacrifice of legal principles, as declared by the judges of England, from whence our rules of human conduct were adopted, and still obtain in this territory, except as modified by statutory enactment. The courts which declare the right to recover for

mental anguish, in a case of this character, do so upon the assumption that a human corpse is property. Not property in the general acceptation of that term but a sort of *quasi* property, that is, that it so resembles property, in the right of the relatives to control and direct its interment, and to have it kept inviolate from negligent or malicious injury, that the law of the rights of property and the remedy for the destruction thereof should be extended to such cases, measuring the injury and compensation by the mental suffering of the living occasioned by the desecration of the dead.

The disposition to protect the bodies of the departed, as indicated by these decisions, appeals to our higher sensibilities, but the rules announced by these courts authorizing recovery for mental anguish alone is, in our opinion, largely the result of sentiment and is in conflict with the common law of the land. It is true that in some countries the bodies of deceased persons have been seized and sold for debt, and, under such a law, they would be property. Greatly to their credit, England and the United States have always considered the decent burial of the dead of more importance than the payment of the debtors claims.

The case of *Burney v. Children's Hospital*, in Boston, (Mass.) 47 N. E. 401, is perhaps the strongest case on the side of appellant. The court said: "A father of a child, who in its natural guardian, has such a right to its dead body that he may maintain action against one to whom he intrusted the child for treatment, and who, without his consent, performed an autopsy on the dead body." The cases cited in support of the decision just referred to are not in point, except in so far as they deal with the right of the relatives or administrator to control, care for and bury the dead body.

They do not suggest a remedy in a court of law for mental suffering as a result of an infringement of those rights. The case of *Meagher v. Driscoll,* 99 Mass. 281, cited in the opinion, did not involve the question of mutilation of a corpse The defendant had entered upon the lot of plaintiff in a cemetery and removed therefrom the dead body of his (plaintiff's) child. The action was in the nature of trespass *quare clausum fregit,* and the injury was to the plaintiff's close, by breaking and entering and digging the soil. The exhuming of the dead body and what was done with it, were only circumstances which the jury were permitted to consider in determinating as to whether the trespass was wilful or characterized by gross carelessness. In the opinion, the court said : "He who is guilty of a wilful trespass, or one characterized by gross carelessness and want of ordinary attention to the rights of another, is bound to make full compensation. In such circumstances, the natural injury to the feelings of the plaintiff may be taken into consideration in trespass to real-estate as well as in other actions of tort." The court expressly held that a dead body is not property and, after burial, the only remedy for disturbing it is an action for trespass *quare clausum;* citing, with approval, 2 Blackstone's Comm. 429.

In the case of *Beam v. Cleveland, C. C. & St. Louis Ry. Co.,* 97 Ill. App. 24, it was held that one can, where he pays for the transportation thereof, recover damages for injury to the remains of his dead brother, occasioned by the negligence of the railroad company. This decision, however, is simply a statement of the rule, and the case is not argued from general principles, nor is it supported by a citation of authorities.

Our attention has also been directed to the following cases which sustain the doctrine of recovery for mental anguish, caused by the delay in shipment of or injury to a dead body: *Mattie Hale v. Bonner, et al* (Tex.), 14 L. R. A. 366; *Wells Fargo Express Co. v. Fuller* (Tex.), 35 S. W. 824, and *Louisville and Nashville R. R. Co. v. George W. Hull* (Ky), 57 L. R. A. 771. In the last case cited, the learned justice who wrote the opinion said:

"The right to recover for mental anguish for failure to deliver a telegram in the class of cases referred to" (speaking of the failure to deliver a message advising the party addressed of the death of a near relative) "was upheld in *Chapman v. Western Union Tel. Co.*, 90 Ky. 265, 13 S. W. 880, and, after reconsideration, this case was adhered to in a number of cases. * * * No sound distinction can be maintained between the telegraph cases and this case. They rest upon the principle that damages naturally resulting from a wrongful act, and fairly within the reasonable contemplation of the parties, may be recovered."

The other two (Texas) cases cited also state that they involve the same principle as the telegraph cases. This conclusion we concede, and the point was decided by this court against the contention of the appellants in the case of *Butner v. Western Union Telegraph Co.*, 2 Okla. 234. The telegram was delivered to the defendant company for transmission to plaintiff and, if delivered, would have informed him of the death of his daughter, the failure of which prevented him from giving her a proper burial, he not having heard of her death until two days thereafter.

Mr. Justice Burford (now Chief-Justice), wrote the opinion, after citing and reviewing the authorities (and there is quite a large list of them) says:

"Damages for mental pain and suffering alone, occasioned by the negligence of a telegraph company in failing to deliver a message announcing the death of a relative, cannot be recovered," and: "If the authorities holding the affirmative of this proposition presented uniformity of the result obtained, and harmony in the reasoning attempted in support of it, the array would be formidable.    Their force, however, is weakened by self evident disparity of reasoning and conflict of result.    Some hold that mental anguish is not a cause of action but is merely a dependent incident to be taken into consideration in addition to pecuniary damages shown; while others assert that it is an independent cause of action, a distinct element of damage.    Some hold that negligence sufficient to uphold a recovery must be wilful; others, that simple negligence will suffice.    Some uphold the recovery on the ground of punishment; others upon the ground of compensation, and some blend both grounds.    This conflict exists not only between the courts of the different states entertaining this view, but in one instance is exhibited in the decisions of a single state.    The supreme court of Texas, in the course of its adjudications upon this subject, has held both the affirmative and the negative of all the propositions above enumerated.    Numerous other conflicts exist among the decisions of that court, notably the affirmance and the denial of the rule that the sendee, before he can recover, must identify himself with the contract of transmission.

"The Tennessee and Alabama cases are not authority in favor of the plaintiff's position, because they refuse to recognize mental pain as an element of damage.    They hold it to be an incident, merely, to be taken into consideration in addition to pecuniary loss.    There is a decided weight of authority against the right of the plaintiff in error to recover for mental suffering."

In dealing with the question presented we have no reference to dead bodies or the skeletons thereof which have been

by law properly appropriated for the benefit of science; as for instance, for medical schools, and other institutions of learning. That such are property we do not deny, because they have an intrinsic value for a particular purpose; nor do the authorities cited have reference to such cases. They deal with cases where the remains were either intended for burial, or where they were disturbed after having been consigned to the grave. The position in which the courts declare the right by reason of the *quasi* property interest of the relative in them, is the only one which can be supported by any degree of logic; but those courts fail to recognize that the dead body of a near relative, neither by the natural law of mankind, by the common law of England or by the statutory law of most of the states, may not be sold for personal gain or disposed of in any manner except to bury it decently and respectfully. It is intrusted to his care for that one particular purpose and, should he violate the duty imposed by law, he may be punished as for crime. As has been correctly said: "A dead body belongs to no one, and is therefore under the protection of the public." The case of *Foley v. Phelps* 37 N. Y. Suppl. 471, holds that one may recover for the mutilation of a dead body, not on the ground that there is a *quasi* property interest therein, but because such an act is a violation of the legal right of the relative to have the body in the condition in which it was when life left it, and that there is a remedy at law for the interference of every legal right; and the opinion conveys the idea that damages may be recovered for such invasion. We cannot concur with these views. That equity will aid one in the enjoyment of every legal right by injunction or by some other remedy known to that branch of the law, if the party has no adequate legal remedy, we frankly

concede; bue we strenuously contend that there are legal rights for the violation of which one cannot recover in damages. It requires but brief reflection to conceive of many such cases.

There is no difference in principle between a recovery of a parent for mental pain and suffering caused by the death of a child from personal injury, and a recovery for such pain and suffering as a result of the mutilation of its body after death; such right, in the first class of cases, except where authorized by statute, has been denied by the current weight of authorities. (*Laxelle v. Town of Newfane,* [Vt.] 41 Atl. 511; *Oakes v. Maine Cent. Ry. Co.* 49 Atl. 418; *Knoxville C. G. & L. R. Co. v. Wyrick,* 42 S. W., 434; *Railroad Co. v. Butler,* 57 Pa. St. 335-338; *Bath v. Kansas City El. Ry. Co.* [Mo.] 44 S. W. 778.) In fact if not authorized by statute, there is no right in the personal representative to recover for personal injury after the death of the injured. But, by legislative enactment, the compensation allowed for the wrongful or negligent killing of a child is an amount which will compensate for the actual loss of its services and the expenses made necessary by the injury. In addition to this, exemplary damages may be allowed in certain circumstances, but such damages are intended as a punishment for the wrong done, and not for injury to the feelings of the parent. (Statutes of Okla. of 1893, sec. 2617.)

The courts have always been quick to grant relief, not only for the protection of the dead, but also for the protection of the rights of the living in relation thereto. In one state, mandamus was issued to compel the surrender of a dead body; in others, injunction has furnished the needed remedy. Not because of the interference with the property of another; it

was because a right both natural and legal had been invaded; and, as we have already said, equity will always aid one in the enjoyment of a legal right, even though no property interests are involved. (*Pierce v. Proprietors of Swan Point Cemetery*, 10 R. I. 227, 14 Am. Rep. 667.)

In the case of *Griffith v. Charlotte, Columbia and Augusta Railroad Company*, 23 S. C. 25; 55 Am. Rep. 1. the court said: "An administrator cannot maintain an action for the negligent or wilful mutilation of the dead body of the intestate, but he may sue for injury to the wearing apparel,' citing from Blackstone, (vol. 2, p 429), wherein he says: "Though the heir ·has a property in the monuments and escutcheons of his ancestors, yet he has none in their bodies or ashes," and from Bishop's Criminal Law, Sec. 792: "There can be no property in a person deceased; consequently, larceny cannot be committed of his body, but it can be of the clothes found upon the body, or of the shroud." The same rule is stated in 13 Cyc. p 280: "Since at common law there can be no such thing as property in human remains, no action for civil damages will lie for an injury to a dead body." Citing authorities both English and American.

Where a corpse is mutilated before or after the burial, in such a way as to render necessary the expenditure of extra money or labor in caring for it, or where injury is done to the coffin or clothes, the actual damages sustained may be recovered, and this rule was applied in the case at bar; but after carefully considering all of the authorities at our command, we are firmly convinced that no recovery can be had for mental pain and anguish caused by the negligent mutilation of such body. Nor are we inclined to criticise, as some other courts have done, the failure of the law-making power to pro-

vide for recovery in such a case. The legislature are the judges of the expediency of such a law, and on that question minds might differ, for the legal wrong, as we have observed, is against the public and not against the individual. The perpetrator of such a crime against public decency should not escape severe punishment, as we should tenderly care for the dead.

We in a measure, appreciate the feelings of the appellants over the misfortune which occurred, but we have taken the law as it is, and arrived at the conclusions expressed from a consideration of the legal principles and authorities bearing upon the issue involved; and we are satisfied that the judgment of the lower court should be affirmed at the costs of appellants. It is so ordered.

Beauchamp, J., who presided in the court below, not sitting; Hainer, J. and Pancoast, J., dissenting; all of the other Justices concurring.