## KOONS v. SHELBURNE MOTOR CO.
### No. 22051.  April 3, 1934.

Everest, McKenzie, Halley & Gibbens, for plaintiff in error.

A. L. McRill, Municipal Counselor, and H. T. Deupree, Asst. Mun. Counselor, for defendant in error.

J. S. Ross, S. J. Clay, and J. H. Ross, for plaintiff in error.

J. B. Dudley and Everest, McKenzie, Halley & Gibbens, for defendant in error.

BAYLESS, J.  The plaintiff in error, Mrs. J. P. Koons, filed an action in the district court of Oklahoma county, Okla., against the Shelburne Motor Company, the defendant in error, and when that court sustained a motion for judgment upon the pleadings, in so far as her second cause of action is concerned, she appealed to this court. The parties will be referred to herein as they appeared in the trial court.

For her second cause of action, the plaintiff alleged, in substance: That she contracted with the defendant to replace the motor then in her automobile with a new motor; that defendant took possession of her automobile for that purpose, and thereafter returned it to her with the assurance that it had fulfilled the contract; that she discovered this to be untrue in this, that the defendant had either used the motor then in her car and altered the identification numbers or had replaced her motor with an old, used, and worn motor bearing altered or fictitious identification numbers, and that the bill of sale issued to her bore motor identification numbers different from those on the motor; that she had trouble with this motor, and when she placed the automobile in a garage at Joplin, Mo., for attention, the altered or fictitious character

of the motor numbers came to the attention of the garageman, and he thereupon called her attention thereto, charged her, in the presence of her guests and friends, with being an automobile thief, or of having in her possession a stolen automobile, and further told her that she was subject to arrest for possessing and driving an automobile with altered or fictitious motor numbers; that the defendant had been engaged in the automobile business for several years, and it violated sections 2165, 2166, C. O. S. 1921, by selling to her a car with altered motor numbers, that it well knew that automobiles were stolen and the identification numbers altered, and that it is a sign and indication of a stolen automobile and of having a stolen automobile in one's posseson to be found driving or possessing an automobile with altered identification numbers, and it was subjecting her to arrest therefor, and was willful and wanton in so placing such a motor in her automobile. We deem it best to quote certain of the remainder of said cause of action:

"That these accusations caused the plaintiff to have a great nervous shock. She was humiliated and felt disgraced in the presence of her friends and guests and other people that had come around. That this shock continued for many weeks. That she was made sick as a result thereof and was required to go to bed to get rest and improvement in her physical and mental condition. That she called in and received the services of doctors who ministered to her on account of her physical condition resulting from the accusations aforesaid, and the shock and annoyance that she received as a result of the discovery of the deceit and fraud of the defendant in sending her out with a defective, old and worn motor, with false and fictitious numbers thereon.

"That in this nervous plight, plaintiff was confused, her mental faculties were upset, and she was undertermined in what course to pursue, but finally decided that she would resume her journey to Columbus, O., and go immediately thence to the factory of the Hupmobile Company in Detroit, Mich., where this and other automobiles of this kind are manufactured, and this she did. That her trip from Joplin, Mo., to Columbus, O., and on to Detroit, Mich., occupied several days. That she had to drive the car slowly and with utmost caution, lest an accident happen; that she had been warned by the garage keeper at Joplin, Mo., that if anything became the matter with her car and she had to call a mechanic to repair it, she probably would be arrested for driving a stolen automobile and that the fear, anxiety and trepidation of being arrested, charged with a felony, constantly attended her from the

time she left Joplin until she arrived at Detroit, Mich., several days thereafter.

" * * * Plaintiff avers that as a result of the accusations and insults aforesaid, her humiliation, the shock to her nervous system, the fact that she was made sick as a direct result of the experience described, and the great inconvenience and annoyance she was caused on account of the matters and things aforesaid, she has been damaged in the sum of $15,000.''

Taking into consideration the summarized portions of this pleading and the quoted portion, we are of the opinion that the plaintiff is seeking to recover damages arising from the breach of the contract. It is further our opinion that the petition alleges willful or wanton breach of the contract, as distinguished from a mere negligent breach thereof. We are further of the opinion that the plaintiff, in this pleading, has limited the elements of damage to one, that of what is commonly called "mental suffering."

Is mental suffering an element of damage arising from the breach of a contract? This court has held not in a number of cases. Butner v. Western Union, 2 Okla. 236, 37 P. 1087; Long v. C., R. I & P. Ry. Co., 15 Okla. 512, 86 P. 289; Frisco v. Keiffer, 48 Okla. 434, 150 P. 1026, and other cases. Without discussing again the necessity of the coincidence of a physical or tangible injury with mental suffering, which was deemed of paramount importance in these cases, it is apparent that these cases follow the rule in telegram cases.

The authorities almost unanimously recognize exceptions to the rule that mental suffering is not, ordinarily, an element of damage arising from the breach of a contract. See 56 A. L. R. 657 and notes, 44 A. L. R. 429 and notes, and 23 A. L. R. 365. Page, on the Law of Contracts, vol. 6, sec. 3207, cites a number of such cases involving breaches of contracts: to marry, of one spouse to renew cohabitation with the other, to furnish a wedding trousseau, to furnish medical attention or burial services to members of one's family, to convey passengers, to refuse admittance to a place of amusement or ejection from bathhouse. In our opinion, such of the later authorities as permit a recovery for mental suffering alone do so largely upon the construction of the contract, having in mind the relations of the parties, the nature of the obligations assumed and later breached, the objectives of the contract and the known or rationally to be imputed knowledge of the consequences likely to flow from the breach.

In the pleading it is alleged, in substance, that the breach of this contract, thereby violating the laws of the state, was willful or wanton. The truth of these allegations was admitted by the motion for judgment on the pleadings. Deming Inv. Co. v. Reed, 72 Okla. 112, 179 P. 35.

In our opinion, it is only reasonable to say that the defendant knew, or should have known, that if it placed in the plaintiff's automobile a motor bearing altered or fictitious identification numbers, it would be a probable and natural consequence if the plaintiff should happen to be arrested, or be detained or be charged by responsible third persons with violating the laws in owning what might be proven to be a stolen automobile motor, or certainly an automobile motor to which she had no proper and requisite certificate of title.

But is it reasonable to be said that the defendant rationally could contemplate that some third person, not acting upon knowledge, responsibility, or authority, might make accusations of criminal character against plaintiff; or that, if such accusations were made, it would result in the plaintiff suffering mentally to the extent of physical illness, or in the plaintiff determining to drive hundreds of miles eastward for relief, in a state of mind of uncertainty and apprehension, instead of returning to the defendant's place of business or her home for her redress?

To say yes would mean that defendant must assume responsibility for the statements made to plaintiff by a third person, probably without authority or knowledge and beyond anything justified by the facts of the case. It would mean, further, that if the plaintiff was confronted with this situation and chose to pursue her intended course, worrying all of the while and ultimately becoming ill as a result thereof, instead of returning to Oklahoma for redress, the defendant would be chargeable with all of the results of the former course. The rule of mitigating the damages would prevent a result of this character. It would mean also that the extent of the defendant's liability would vary with the nature and sensibilities of the persons with whom he contracted.

In our judgment, the mental suffering of the plaintiff, and the extent thereof, are not the reasonable consequences of the breach of the contract alleged against the defendant.

We have not been cited a case in which mental suffering is an element of damage arising from the breach of a contract by the sale of an illegal article of commerce, the possession of which resulted in arrest, or detention or annoyance of the vendee. None has come to our attention.

The plaintiff also prays for punitive damages as a part of this cause of action. No actual damage having been alleged which could have been recovered upon, punitive damages are not proper. Western Union v. Garrett, 59 Okla. 50, 158 P. 619.

The judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, BUSBY, and WELCH, JJ., concur.