Dear Mr. Brown:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Currently the practice in the funeral industry in Oklahoma is that any remaining prosthetic devices and implants[1] are discarded after cremation of a body. Recycling companies are approaching funeral homes and crematories offering compensation for recycling the metals found in these products. In light of these requests, may funeral directors, embalmers and/or funeral establishments licensed by the State of Oklahoma sell to recycling companies prosthetic devices and implants remaining after cremation of a body?
 2. If the answer to the above question is yes, may a funeral director, embalmer and/or funeral establishment licensed by the State of Oklahoma retain any compensation received from the sale of these prosthetic devices and implants?
In Oklahoma crematories are regulated under the Funeral Services Licensing Act. See 59 O.S.Supp. 2008, §§ 396.29[59-396.29] — 396.33. The right to cremate a body by "[t]he person charged by law with the duty of burying the body of a deceased person" is provided in Section 396.29(A) of Title 59. Cremation is defined as "the technical process, using heat and flame, that reduces human remains to bone fragments. The reduction takes place through heat and evaporation. Cremation shall include, but not be limited to, the processing and pulverization of the bone fragments." Id. § 396.2(14). *Page 2 
Section 396.29 of Title 59 provides that "all of the recoverableresidue of the cremation process shall be removed from the crematory and placed in a separate container so that the residue may not be commingled with the cremated remains of other persons." Id. § 396.29(B) (emphasis added).[2] "Recoverable residue" is not otherwise defined, either within the Act or in the administrative rules promulgated by the Oklahoma Funeral Board. See 59 O.S.Supp. 2008, §§ 396.29[59-396.29] — 396.33; OAC235:10-1-2. When words are not otherwise defined, we look at the common definition of the words for their meaning. See State ex rel. Cartwrightv. Georgia-Pac. Corp., 663 P.2d 718, 722 (Okla. 1982) ("The ascertainment of legislative intent is the cardinal rule of statutory construction; and in the absence of a contrary definition of the common words used in a legislative act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance."). "Recoverable" is defined as "capable of being recovered." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1898 (3d ed. 1993). "Residue" is defined as "something that remains after a part is taken, separated, removed, or designated." Id. 1932.
Implants and prosthetic devices would not be considered "human remains," which is defined within the rules of the Oklahoma Funeral Board as "the body of a dead human being, deprived of life, but not yet entirely disintegrated." OAC 235:10-1-2. Thus, while the implants and prosthetic devices may be part of the "recoverable residue," they are not "human remains." The question, though, is whether these implants and prosthetic devices are property of the deceased or of the funeral establishment performing the cremation.
To answer this question, however, an understanding of property rights in dead bodies and in attachments to those bodies is necessary. While there is no common law property right in the body of a deceased person, courts have recognized that a quasi-property right vests in the nearest relatives, arising from their duty to bury their dead relative. Tinsleyv. Dudley, 915 S.W.2d 806, 807 (Tenn.Ct.App. 1995) (citing 22A AM. JUR. 2D Dead Bodies § 2; Barela v. Frank A. Hubbell Co., 355 P.2d 133 (N.M. 1966); 22 AM. JUR. 2D Damages § 3).
Oklahoma first addressed this question prior to statehood. Long v.Chicago, Rock Island Pac. Ry. Co., 86 P. 289 (Okla. 1905). This case involved the question of whether the parents of a dead child could recover damages for mental pain and anguish because of *Page 3 
the mishandling of the child's body by the railroad. The court recognized that some kind of right must exist in the body to bring this type of action:
 The courts which declare the right to recover for mental anguish in a case of this character do so upon the assumption that a human corpse is property; not property in the general acceptation of that term, but a sort of quasi property-that is, that it so resembles property, in the right of the relatives to control and direct its interment, and to have it kept inviolate from negligent or malicious injury, that the law of the rights of property and the remedy for the destruction thereof should be extended to such cases, measuring the injury and compensation by the mental suffering of the living occasioned by the desecration of the dead.
 . . . .
 In dealing with the question presented we have no reference to dead bodies or the skeletons thereof which have been by law properly appropriated for the benefit of science. . . . That such are property we do not deny, because they have an intrinsic value for a particular purpose. . . . [T]he dead body of a near relative, neither by the natural law of mankind, by the common law of England, nor by the statutory law of most of the states, may not be sold for personal gain or disposed of in any manner except to bury it decently and respectfully.
 . . . .
 In the case of Griffith v. Charlotte, Columbia Augusta Railroad Company, 23 S.C. 25, 55 Am.Rep. 1, the court said: "An administrator cannot maintain an action for the negligent or willful mutilation of the dead body of the intestate, but he may sue for injury to the wearing apparel."-citing from Blackstone, vol. 2, p. 429, wherein he says: "Though the heir has a property in the monuments and escutcheons of his ancestors, yet he has none in their bodies or ashes,". . . .
Id. at 290 — 92 (emphasis added). The court found in this case that, while the parents of the deceased child could recover for actual damages sustained, they were not entitled to recover damages for mental pain and suffering, "for the legal wrong, as we have observed, is against the public, and not against the individual." Id. at 292. Although the court in Long found that Oklahoma did not recognize individual property rights in a dead body, the court noted that property rights could exist in items belonging to the deceased.
Since Long was issued in 1905, Oklahoma has given a person certain property rights in his or her own body. Oklahoma statutes provide that "[a]ny person has the right to direct the manner in which his or her body shall be disposed of after death, and to direct the manner *Page 4 
in which any part of his or her body which becomes separated therefrom during his or her lifetime shall be disposed of." 21 O.S. 2001, § 1151[21-1151](A).[3] In addition to providing a property interest in one's own body, Oklahoma has provided a quasi-property interest vesting in the next of kin by Section 1158 of Title 21, which defines the person who has the "duty of burying the body of a deceased person." Id.[4] Section 1160 of Title 21 also gives custody *Page 5 
of the dead body to the "person charged by law with the duty of burying the body of a deceased person." Id.
It is evident that the intent of the Legislature was to delineate a hierarchy of people who have the right and duty to determine how a dead body is to be buried. "In the *Page 6 
interpretation of statutes, we do not limit our consideration to a single word or phrase. Instead, we construe together the various provisions of relevant enactments, in light of their underlying general purpose and objective, to ascertain legislative intent." State ex rel.Dep't of Health v. Robertson, 152 P.3d 875, 878 (Okla. 2006). Thus, a "quasi-property" right exists in the dead body.
Oklahoma has not specifically addressed the issue of property rights in implants and prosthetic devices remaining after cremation. A Louisiana court, however, has addressed ownership in a dental prosthetic device, determining that a dental prosthetic device was the property of the purchaser. Allen v. Pippin, 327 So.2d 667, 671 (La.Ct.App. 1976) ("Having paid the price for the making of the prosthetic devices, they now belong to Mr. Pippin and should be delivered to him."). This case, though, does not directly answer the question of whether implants and/or prosthetic devices are considered property when they were once part of the body.
A comprehensive analysis of this issue was published in 1996 and sheds light upon the legal status of prostheses and implants remaining after cremation. See Phillipe Ducor, The Legal Status of Human Materials, 44 DRAKE L.REV. 195 (1996). In this article the author, noting that a person's body could be "both a subject and object of rights," discussed the concept of "objects [sic] corporel personne par destination,"[5]
stating:
 This notion is drawn by analogy from Roman real property law, which recognizes a mobile object as part of the real estate when the former is integrated with the latter. Interestingly, the integrated accessory is legally part of the real estate even if not added by the real estate owner. Applied to the human body, this means an artificial prosthesis should also be treated and protected as a body part at the moment it is integrated with the body. In other words, the prosthesis legally "disappears" when it is embodied in the subject or the person. The prothesis is a thing — object of rights — not when it is first purchased, but when it is integrated in the person of the purchaser. At this time, it loses its status of an object of rights to become a personne par destination. The object becomes a part of the person and is protected along with the person. No reason exists to apply commercial rules to integrated prostheses any more than to persons.
 This analogy to real property law could continue through another line of reasoning. According to Roman property law, a mobile accessory not physically integrated with the real estate can be part of it if the accessory is needed by the owner. As applied to human materials, any device necessary to the functioning of the person would be personne par destination as soon and as long as the owner attaches it to his person. The physical integration with the body would no longer be necessary. Accordingly, *Page 7 
all prostheses, whether physically integrated or not, could be personne par destination. This concept extends to many prostheses: removable dentures, artificial limbs, hearing aids, glasses, lenses, crutches, and so forth. Conversely, the prosthesis recovers its former status of object when the person decides to end the assignment of the device.
Id. at 207-08 (footnotes omitted) (emphasis added). Thus, a strong argument supports the concept that once implants and prosthetic devices are no longer needed or attached to a person's body they become property, whether or not they were considered property prior to this separation.
A few states have also addressed this issue. Wisconsin prohibits a crematory from selling "any material or device, including a prosthetic or medical device of a decedent, that is obtained from cremating the human remains of the decedent." WIS. STAT. ANN. § 440.80(4)(a) (West 2009). Illinois law states:
 (j) A crematory authority shall not remove any dental gold, body parts, organs, or any item of value prior to or subsequent to a cremation without previously having received specific written authorization from the authorizing agent and written instructions for the delivery of these items to the authorizing agent. Under no circumstances shall a crematory authority profit from making or assisting in any removal of valuables.
410 ILL. COMP. STAT. ANN. 18/35 (West 2009). The Indiana Code prohibits a crematory from selling "prosthetic or medical devices obtained as a result of cremation or from cremated remains." IND. CODE ANN. § 23-14-31-50 (West 2009). Oklahoma does not have a similar statute.
As noted earlier in the pre-statehood case Long, Oklahoma has long supported the concept of property rights in non-body parts belonging to the person who has died. See Long, 86 P. at 292. This concept is also supported by the definition of "property" in the Oklahoma statutes. Section 9 of Title 60 defines "personal property" as "[e]very kind of property that is not real. . . ." Id. Title 60 goes on to describe "ownership" in property as applying to "all inanimate things which are capable of appropriation, or of manual delivery[.]" Id. § 2. "Upon the death of the owner, [ownership] passes to his personal representatives, except where, in the case provided by law, it passes to his devisees or successors in office." 60 O.S. 2001, § 313[60-313]. Oklahoma criminal statutes define "personal property" to include "every description of money, goods, chattels, effects, evidences of right in action, and written instruments by which any pecuniary obligation, right or title to property, real or personal, is created or acknowledged, transferred, increased, defeated, discharged or diminished." 21 O.S. 2001, § 103[21-103]. While a question may remain as to whether implants and/or prosthetic devices attached to and part of a body are property while the person is alive, considerable authority exists to support the conclusion that these items do become property at the death of the person, and this property belongs to the deceased's personal representative. *Page 8 
The next question, then, is who may decide whether to recycle these implants and prosthetic devices? When property is placed in the care of a third party a bailment is established. See 15 O.S. 2001, § 442[15-442] ("A voluntary bailment is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party; the person giving is called the bailor and the person receiving the bailee.") A "[b]ailment is a legal status created by the transference of possession of personal property to another for the accomplishment of some particular purpose and establishes a bailor-bailee or trust relationship." Chambers v. Morgan, 671 P.2d 89, 90
(Okla.Civ.App. 1983).
As related to your questions, a bailment is established between the crematorium or funeral establishment and the person with the duty to bury or cremate the dead body. A bailee owes a duty toward the bailor to maintain the property in safekeeping. 15 O.S. 2001, § 445[15-445]. In addition, "[a] bailee may not use the thing bailed, or permit it to be used, for any purpose, without the consent of the bailor." Id. § 455. Failure to handle the property as directed by the deceased's personal representative could be regarded as conversion:
 Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary to constitute a conversion that the property come into the defendant's possession wrongfully. Nor is it necessary that the alleged converter apply the property to his own use, or be in bad faith.
Steenbergen v. First Fed'l Sav. Loan, 753 P.2d 1330, 1332 (Okla. 1987) (citations omitted).
Implants and prosthetic devices, while not part of the dead "human remains," are property as they can be "appropriated" or "manually delivered." Thus, ownership passes to the deceased's "personal representative" or as otherwise provided by law. A funeral establishment or crematorium, as bailee of the property, cannot unilaterally decide to sell or give away these implants or prosthetic devices.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Implants and prosthetic devices remaining after cremation of a body are property. See Long v. Chicago, Rock Island Pac. Ry. Co., 86 P. 289, 290-92 (Okla. 1905); 60 O.S. 2001, §§ 2[60-2], 313.
 2. A bailment is formed when the person with the duty to bury or cremate the body places the body, with any personal property attached thereto, in the care of the funeral establishment or crematorium. 15 O.S. 2001, § 442[15-442]; Chambers v. Morgan, 671 P.2d 89, 90 (Okla.Civ.App. 1983). Funeral establishments or crematoriums, as bailees, can only dispose of any implants or prosthetic devices remaining after cremation with the consent of the bailor. 15 O.S. 2001, § 455[15-455]. Thus, any compensation received from recycling these implants and/or prosthetic devices may be retained by the funeral establishment or crematorium only at the direction of the personal representative of the deceased.
W. A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
PATRICIA A. PODOLEC ASSISTANT ATTORNEY GENERAL
[1] The term "prosthetic devices and implants" as used in this Opinion means devices and implants contained within the body, such as hip and knee joints, plates, rods and screws.
[2] The Oklahoma Funeral Board recently adopted a proposed rule on March 12, 2009, which in pertinent part states:
 (d) Upon completion of the cremation, and insofar as practicable, all of the recoverable residue of the cremation process shall be removed from the cremation chamber. If possible, the noncombustible materials or items shall be separated from the cremated remains and disposed of, in a lawful manner, by the crematory. The cremated remains shall be reduced by motorized mechanical device to granulated appearance appropriate for final disposition.
OAC 235:10-14-1, http://www.okfuneral.com/news/Draft%201-8-09.pdf (emphasis added).
[3] This statute also provides:
 B. A person may assign the right to direct the manner in which his or her body shall be disposed of after death by executing a sworn affidavit stating the assignment of the right and the name of the person or persons to whom the right has been assigned.
Id.
[4] This statute states:
 The duty of burying the body of a deceased person devolves upon the persons hereinafter specified:
 1. The person or persons designated in subsection B of Section 1151 of this title.
 2. If the deceased was married at the time of his or her death, the duty of burial devolves upon the spouse of the deceased.
 3. If the deceased was not married, but left any kindred, the duty of burial devolves upon any person or persons in the same degree nearest of kin to the deceased, being of adult age, and possessed of sufficient means to defray the necessary expenses.
 4. If the deceased left no spouse, nor kindred, answering the foregoing description, the duty of burial devolves upon the officer conducting an inquest upon the body of the deceased, if any such inquest is held; if none, then upon the persons charged with the support of the poor in the locality in which the death occurs.
 5. In case the person upon whom the duty of burial is cast by the foregoing provisions omits to make such burial within a reasonable time, the duty devolves upon the person next specified; and if all omit to act, it devolves upon the tenant, or, if there be no tenant, upon the owner of the premises where the death occurs or the body is found.
21 O.S. 2001, § 1158[21-1158].
[5] "This translates to `corporeal object, person by purpose.'"Id. at 207 n. 78. *Page 1