St. Louis Southwestern Railway Company *v*. White.

4-4185

Opinion delivered March 2, 1936.

*A. H. Kiskaddon* and *Gaughan, Sifford, Godwin & Gaughan,* for appellant.

*R. W. Wilson,* for appellee.

SMITH, J.   James L. White, a young man, was shot and killed by two other young men, who, to conceal their crime, placed the body of the deceased upon the track of the appellant railroad company, where it was run over and badly mutilated by one of appellant's trains.

In order to get the body on the track they carried it from a public highway, across the railroad right-of-way, and lifted it over the fence, inclosing the right-of-way, and over a ditch running parallel to the railroad tracks.

The nearest crossing of the railroad, by any road, was more than a half mile from the place where the body was found.   The deceased was twenty-three years old, but was unmarried and lived at the home of his father, who brought this suit to recover damages for the mutilation of the body, and from a judgment awarding damages in the sum of $500 is this appeal.

Liability is predicated upon two counts (a) negligence in the operation of the train, which resulted in the dead body not being discovered, and (b) failing to promptly and properly gather up the remains of the body after it had been run over.

The trial court declined to charge the jury that the "lookout statute" (§ 8568, Crawford & Moses' Digest) did not apply, for the reason that the dead body was neither a person nor property, within the meaning of that statute, and, therefore, there was no duty to keep the lookout required by the statute referred to.   The refusal to so instruct the jury is one of the errors assigned for the reversal of the judgment.

There are two answers to this assignment of error. The first is that the aid of the statute was not invoked. The second is that the statute does in fact apply. There was evidence which is sufficient to support the finding that it was an act of negligence for appellant's train to run over the dead body, although as the court charged the jury, its attitude to the railroad company was that of a trespasser. Had this been a live person instead of a dead person he would have been a trespasser. He would have been there without business or invitation, and without the knowledge or consent of the railroad company.

So that, under the tests whereby we determine whether a live man was a trespasser, we must conclude that this was the attitude which the dead body occupied to the railroad company.

The railroad company was in no manner responsible for the wrongful act of placing the body on its track. Its liability must be determined by a consideration of what thereafter occurred, but in the determination of that question, the provisions of the "lookout statute," *supra*, must not be disregarded.

It is true that the statute requires the lookout to be kept for persons and property upon the railroad track, and in one sense this dead body was neither a person nor property. But it was the body of James L. White who had been a human being which could not be cast aside or mutilated as an inanimate object, having neither rights nor value to any one. It had the right of sepulture, conferred by the simplest and earliest practices of civilized peoples. Society generally, and his next of kin specially, were under the duty of giving his body burial, and these latter had the right to perform that duty decently and in order; to bury the body in the condition it was in when life departed, and the denial of this right, whether wilfully or through negligence, is an actionable wrong.

One of the leading cases on the subject is that of *Larson* v. *Chase*, 47 Minn. 307, 50 N. W. 238, 28 Am. St. Rep. 370, which is annotated in 14th L. R. A. 85. It was there held, as is indicated by the headnotes in that case, that the right to the possession of a dead body, for the purposes of preservation and burial, belongs, in the

absence of any testamentary disposition, to the surviving spouse, if one there be, and, if not, to the next of kin, and that this right is one which the law recognizes and will protect, and that for any infraction of it—such as an unlawful mutilation of the remains—an action will lie.

It was there also held that in such an action a recovery may be had for injury to the feelings and mental suffering resulting directly and proximately from the wrongful act, although no pecuniary damage is alleged or proved.

We are cited to two cases, in each of which the railroad was sued for the mutilation of a dead body. The earlier case is that of *Long* v. *Chicago, R. I. & P. Ry. Co.*, 15 Okla. 512, 86 P. 289, 6 Ann. Cas. 1005, 6 L. R. A. (N. S.) 883. It was there held that the parents of an infant child were not entitled to recover damages for mental pain and anguish occasioned by the mutilation of the dead body of such infant.

Cases like our case of *Peay* v. *Western Union Tel. Co.*, 64 Ark. 538, 43 S. W. 965, 39 L. R. A. 463, are cited, where it was held that damages were not recoverable for mental anguish in the absence of physical injury or other actionable wrong.

The other case, and one which we think sounder in reason, is that of *Kyles* v. *Southern Ry. Co.*, 147 N. C. 394, 61 S. E. 278; 16 L. R. A. (N. S.) 405, where it was held that the mutilation of a dead body, either wantonly or negligently, was itself an actionable wrong and that, "where the rights of one legally entitled to the custody of a dead body are violated by mutilation of the body or otherwise, the party injured may, in an action for damages, recover for the mental suffering caused by the injury." It was also said in this opinion, by the Supreme Court of North Carolina, that, "while a dead body is not property in the strict sense of the common law, yet the right to bury a corpse and preserve its remains is a legal right, which courts will recognize and protect; any violation of it will give rise to an action for damages."

It was also there said, after a review of numerous cases, that the courts of America and other Christian

and civilized countries hold that dead bodies are *quasi* property and that any mutilation thereof is actionable.

We conclude, therefore, that it is the duty of all persons running trains in this State, upon any railroad, to keep a lookout for dead persons lying on the track, as well as for other persons or property.

The reasoning of the Supreme Court of North Carolina, in the case by that court above cited, leads to the conclusion that, where a railroad has mutilated a corpse, whether responsible for the death or not, it is under the duty of gathering up the body and its fragments found on the track, and decently preserving them for burial, and that a negligent failure to perform this duty confers a cause of action upon the person having the right to sue for the mutilation.

As has been said, the plaintiff here alleges two causes of action: (a) negligently mutilating the body, and (b) negligently failing to promptly and properly gather up the remains of the body after it had been run over.

As we have said, there was sufficient testimony, which we do not recite, to support a recovery upon the first ground stated; but there was no testimony sufficient to support a recovery upon the second ground. The body was run over about 2:04 a. m. by a north-bound passenger train, about two and a half miles north of Fordyce. The engineer and fireman testified that they did not know that they had struck the body. A south-bound train also passed the point where the body was found during the night, but there was no showing that this train also struck the corpse.

The train which ran over the body reached Pine Bluff, which was a division point, and another engineer and engine were supplied. The engineer testified that upon leaving the engine at Pine Bluff he made the usual and required inspection from the outside and found no indication of anything being wrong. When the shop men made their inspection they found the head of the deceased in the running gear of the engine. The railroad agent at Fordyce was notified by telegraph. He got in communication with the coroner, as it was his duty under

the law to do (Section 1576, Crawford & Moses' Digest), and that officer appears to have gone to the scene of the decapitation without unreasonable delay. The station agent also directed the section foreman to go and to send his men to search for the body and they appear to have been present when the coroner arrived. The agent later went himself. It was not shown that there was anything which the railroad could have done that was not done in the way of gathering up and protecting the remains. When the head of the dead man was found in the machinery of the engine it was sent to an undertaker to be prepared for burial, and when the head was identified, it was sent without delay to the father of the deceased for burial with the remainder of the body, which, in the meantime, had been buried as the corpse of an unknown person. After the head was found the remainder of the body was exhumed and all of it, except a hand, which was never found, was buried by the father near his home.

In the chapter on ''Dead Bodies,'' 17 C. J. 1143, the law is stated to be ''that a railroad company is not liable for failure to collect the mutilated remains of a body found on its tracks, where the coroner intervened and performed that duty.''

This statement of the law is made upon the authority of the case of *Awtrey* v. *Norfolk & W. Rd. Co.*, 121 Va. 284, L. R. A. 1918D, 279, 93 S. E. 570, and may be approved with qualifications, if indeed there is anything in this decision of the Court of Appeals of Virginia to the contrary, that this is true, provided there had been no negligent failure of the railroad company, which exposed the corpse to the spoliation of animals, human or otherwise, or the disintegration of the weather before the coroner took possession.

We have no way of knowing upon which of the two causes of action the verdict of the jury was based, and we must, therefore, reverse the judgment for the error of submitting the question of failure to gather up and protect the remains.

If it be found by the jury, upon the retrial, which is here ordered, that the operatives of the train were guilty

of negligence in running over the body, testimony may be offered as to the manner and extent of the mutilation as affecting the mental anguish suffered, occasioned thereby, as distinguished from the grief occasioned by the death of the deceased, for which the railroad company is not liable.

Judgment reversed, and cause remanded.