461 P.2d 466

**Ennis D. COVERT, Plaintiff and Appellant,**

**v.**

**KENNECOTT COPPER CORPORATION,**
a New York corporation, Defend-
ant and Respondent.

**No. 11503.**

Supreme Court of Utah.

Nov. 24, 1969.

Dal H. Cutler, of Fratto, Taylor &
Cutler, Salt Lake City, for appellant.

Gordon L. Roberts, Calvin A. Behle,
of Parsons, Behle, Evans & Latimer, Salt
Lake City, for respondent.

CROCKETT, Chief Justice:

Plaintiff Ennis D. Covert sues to recover
damages for her emotional distress she al-
leges resulted from the mutilation of her
husband's body which she avers was caused

by the defendant's negligence in removing him from where he had been buried in an ore slide at the defendant's concentrator plant at Magna, Utah. Inasmuch as her husband, Leonard Covert, was engaged in his duties as defendant's employee at the time of the accident, there is no question involved here as to any alleged negligence in the cause of his death, nor as to the right of plaintiff and his children to receive the workmen's compensation benefit provided by law.[1] The plaintiff's attempt to assert a separate and additional cause of action for her emotional distress was dismissed on defendant's motion for summary judgment, which ruling we review on this appeal.

Though on the basis of the affidavits and depositions submitted there is dispute as to what happened, including whether there was in fact any further mutilation of the deceased's body, in the face of a summary judgment against her, we accept the facts as she contends to test whether there is any basis therein upon which she could show a right of recovery.[2]

On June 7, 1967, plaintiff's husband, with another employee of defendant Kennecott was doing some repair work in what is called a "feeder compartment" to an ore crusher building. The compartment was emptied of ore and a safety cribbing of 2 x 12 planks had been placed over the opening to keep the ore from sliding in from a large ore storage bin above the feeder compartment. For some cause not disclosed, a large volume of ore (estimated at about 40 tons) loosened from the sides of the ore bin above and crashed through the safety cribbing, burying the deceased underneath the ore, while the other employee escaped injury.

Fellow employees began shoveling away ore to get to Mr. Covert. But as the loose ore was dug away more kept sliding in from above. It was soon realized that this was futile because it would take "anywhere from two to four hours" to extricate him that way; and obviously, the only hope of saving his life was to free him at the earliest possible moment. After a few minutes of abortive efforts, the superintendent, Mr. Charles Hanna, and the two foremen present, decided that the quickest and most feasible way to get to Mr. Covert was to activate the conveyor which moves the ore through the compartment and thus bring him to the end where the ore exits. One of the employees, a Mr. McKellar, who was understandably upset and in emotional

1. See Sec. 35–1–45, U.C.A.1953: "Every employee * * * and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment * * * shall be entitled to receive, * * * compensation * * * as is herein provided." And see Sec. 35–1–68, U.C.A.1953, which sets out the formula to determine the amount to be paid to dependents.

2. See Rule 56, U.R.C.P.; Controlled Receivables, Inc. v. Harman, 17 Utah 2d 420, 413 P.2d 807.

distress, made what plantiff character-izes as "anguished and repeated protests" to this being done. Nevertheless, the machinery was started and kept at the lowest possible speed until he could be seen, whereupon he was extricated by shoveling away the ore. One of the foremen, a Mr. Rohletter, attempted mouth to mouth resuscitation until the ambulance came and its crew took over. Mr. Covert was pronounced dead on arrival at the hospital. Plaintiff did not see him until after the morticians had prepared him for burial. Her claim of emotional distress arises from what she heard others say as to removing him by conveying him along with the ore.

We dealt with the question of recovery based on emotional distress unaccompanied by physical injury in the case of Samms v. Eccles,[3] in which we stated:

> Our study of the authorities, and of the arguments advanced, convinces us that, conceding such a cause of action may not be based upon mere negligence, the best considered view recognizes an action for severe emotional distress, though not accompanied by bodily impact or physical injury, where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality. * *

Plaintiff urges that there is an exception to the rule as to recovery for emotional distress more liberally allowing recovery where the mutilation or desecration of the dead is involved, and cites authorities which appear to recognize that recovery may be had where this has resulted from negligence.[4] We believe that those cases, viewed on their particular facts, may more properly be regarded as not so much of an exception to the Samms rule stated above, as a specialized application of it. They seem to have their basis in some generally accepted facts concerning human society: that the cessation of life is suffused with mystery; that the love and affection of those bereaved are centered upon the re-

---

3. 11 Utah 2d 289, 358 P.2d 344 (1961), and authorities therein cited.

4. Examples of cases recognizing an action for mental distress resulting from the mistreatment of bodies: see Brown Funeral Homes & Ins. Co. v. Baughn, 226 Ala. 661, 148 So. 154 (1933) ; and Carey v. Lima, Salmon and Tully Mortuary, 168 Cal.App.2d 42, 335 P.2d 181 (1959) (recovery allowed for emotional distress suffered by bereaved family members because of negligent embalming) ; and see St. Louis Southwestern Ry. Co. v. White, 192 Ark. 350, 91 S.W.2d 277 (1936) ; Kyles v. Southern Ry. Co. (1908), 147 N.C. 394, 61 S.E. 278, 16 L.R.A.,N.S., 405, and Morrow v. Southern Ry. Co., 213 N.C. 127, 195 S.E. 383 (1938). (These cases involve negligence in failing to look out for dead persons lying on railroad tracks).

mains of departed loved ones; and that consequently, by the common consent and custom of mankind they are treated with the utmost consideration ranging from a high degree of respect to reverence.[5] An examination of the cases referred to upon the premise of those facts will reveal that where an action based on negligence is recognized, there is something involved which could be considered a violation of the respect due to the dead and thus as "offending against the generally accepted standards of decency" in that regard.

But a more important consideration here is that those cases have no application to the fact situation in this case because they do not deal with attempts at rescue. That is the aspect of this case which makes it significantly different from those referred to. We have no desire to disparage in any degree proper respect for the dead, but where there exists any possibility of saving a life, that is a far more important objective and takes preference.[6] For this reason it is and should be the policy of the law not to discourage persons under such circumstances as existed here from undertaking a rescue by compelling them to "walk on eggs" for fear that some mishap or misjudgment might result in their being held liable in damages; but on the contrary, should be somewhat liberal in affording reasonable protection to persons who attempt to carry out humanitarian impulses in attempting to save a life.[7] Corollary to the humanitarian aspects of rescue just discussed, and also to be taken into account is the well known principle: that one who is confronted with a sudden emergency is not required to use the same judgment that may be required of him in calmer and more deliberate moments.[8]

The pivotal aspect of plaintiff's claim is perhaps best shown by her own words in her deposition:

> I am mad and bitter against Kennecott for having no regard for his body. He was dead. So why didn't they take time to dig him out? They should never have pushed that button. [to activate the conveyor] If I had been there, they wouldn't have ever gotten my consent to do it.

5. See Sec. 76–10–1, U.C.A.1953, making it a felony to mutilate, disinter, or remove a dead body from the place of burial; Treatise on the Gods, H. L. Mencken; and cf. The Egyptian Book of the Dead.
6. See 38 Am.Jur. 931.
7. Cf. Peyton v. Texas & P. Ry. Co., 41 La.Ann. 861, 6 So. 690 (1889), plaintiff was excused of conduct which might otherwise have been considered negligent because of urgency of his action in attempting to rescue another. Related to this policy are examples in our statutory law: see Sec. 58–12–23, U.C.A.1953, physician rendering care at scene of emergency immune from liability if he acts in good faith; and cf. Sec. 41–6–31, U.C.A.1953, duty imposed upon driver of motor vehicle to render assistance to persons injured in accident.
8. Howard v. Ringsby Truck Lines, 2 Utah 2d 65, 269 P.2d 295 (1954).

One of the difficulties with her position is the assumed fact, now perhaps plain enough from hindsight, that "he was dead," something which no one could know for sure. At the time of critical concern here the paramount consideration was that if Mr. Covert could be rescued soon enough his life might be saved; and the defendants were thus under the urgent necessity of acting with the greatest possible speed and the most expedient means of accomplishing that objective. They are accused of no intentional wrong or any bad faith in what they did. Their conduct which the plaintiff characterizes as negligence, even under the facts as contended by her and the accusation she makes, would impute to the defendants no greater wrong than a mistake in judgment in circumstances of emergency.

We are in accord with the view taken by the trial court, that, upon the facts taken most favorably to the plaintiff, and considered in the light of the principles herein discussed, there is nevertheless no basis shown upon which recovery could be allowed. The summary judgment was therefore properly granted.

Affirmed. Costs to defendant (respondent).

TUCKETT and ELLETT, JJ., and BRYANT H. CROFT, District Judge, concur.

CALLISTER, J., concurs in the result.

HENROID, J., not participating.