2007 UT 65

**John CARBAUGH and Dixie Carbaugh, Plaintiffs and Appellants,**

v.

**ASBESTOS CORPORATION LIMITED, et al., Defendants and Appellees.**

No. 20050822.

Supreme Court of Utah.

Aug. 24, 2007.

Attorneys:[1] Gilbert L. Purcell, Novato, CA, for plaintiffs.

Patricia W. Christensen, Salt Lake City, for defendants.

NEHRING, Justice:

### INTRODUCTION

¶ 1 Unlicensed to practice medicine in Utah, Dr. Alvin Schonfeld set up short-term medical clinics in various hostelries in Salt Lake City, Utah, for the purpose of examining persons who suspected that they suffered from asbestos-related diseases. Dr. Schonfeld confirmed the suspicions of forty-seven individuals, whom he diagnosed with asbestos-related diseases. These forty-seven became the plaintiffs in the four cases we have

---

1. Because there are many plaintiffs and defendants involved in these proceedings, there are also many attorneys. We are therefore listing only the counsel who presented at oral argument before this court.

heard together on this appeal. The plaintiffs sued a legion of entities that they believed were legally accountable for their asbestos-related illnesses.

¶ 2 The plaintiffs designated Dr. Schonfeld as their medical expert. He was to present his opinion testimony about the causes of the plaintiffs' conditions. The defendants, however, sought summary judgment on the ground that Dr. Schonfeld had practiced medicine in Utah without a license in violation of the Utah Medical Practice Act (or the Act), Utah Code Ann. §§ 58-67-101 to –803 (2002 & Supp. 2005), and was therefore unreliable as an expert. The district court agreed, granted the defendants' motions, and dismissed the plaintiffs' cases because, without the services of Dr. Schonfeld, they could not present the necessary expert testimony to sustain their claims. We hold that Dr. Schonfeld did not violate the Utah Medical Practice Act when he conducted pretestimony examinations of the plaintiffs and that, therefore, Dr. Schonfeld did not disqualify himself from testifying by performing the examinations.

## BACKGROUND

¶ 3 Although licensed to practice medicine in eleven states, Dr. Schonfeld is not licensed to practice medicine in Utah. His lack of Utah credentials notwithstanding, Dr. Schonfeld traveled to Utah and set up examination sites in hotels and motels in Salt Lake City. Dr. Schonfeld examined a number of individuals, overseeing the administration of pulmonary function tests, diagnosing his subjects, and offering medical advice.

¶ 4 Dr. Schonfeld employed John Panzera as a technician to administer the pulmonary function tests. Mr. Panzera did not have a current license to administer the tests. He had previously been licensed to conduct pulmonary function tests in California, but his license had been inactive since 1996. Dr. Schonfeld diagnosed all of the plaintiffs with asbestos-related injuries, which became the basis for their suits against the defendants. No Utah physician participated in Dr. Schonfeld's examinations or diagnoses.

¶ 5 Believing that Dr. Schonfeld's lack of Utah credentials rendered him unqualified to testify as a medical expert, the defendants moved for summary judgment. The defendants noted that expert testimony was necessary to establish a causal link between asbestos and the plaintiffs' diseases; and because the categorically unreliable Dr. Schonfeld was the only expert designated to testify on the issue of causation, the defendants urged the district court to dismiss the plaintiffs' suits.

¶ 6 After considering the merits of the motion, the district court granted the defendants the relief they sought. The district court concluded as a matter of law that Utah's medical licensing statutes did not permit a medical expert to conduct pretestimony examinations. Based on this conclusion, the district court held that Dr. Schonfeld's testimony was obtained in violation of the Utah Medical Practice Act and was, therefore, unreliable and inadmissible as a matter of public policy. The plaintiffs appealed.

## STANDARD OF REVIEW

¶ 7 District courts generally enjoy considerable latitude in making evidentiary rulings, including rulings concerning the qualifications of expert witnesses under rule 702 of the Utah Rules of Evidence. In most instances, therefore, we will disturb such rulings only when the district court has exceeded its discretion. *State v. Brown*, 948 P.2d 337, 340 (Utah 1997). Our grant of deference to a district court ends, however, when we review its interpretation of statutes. *Pugh v. Draper City*, 2005 UT 12, ¶ 7, 114 P.3d 546. This appeal features elements of both an evidentiary and a statutory ruling. The district court ruling was made in the context of an application of a rule of evidence, but the ruling is wholly dependent upon the court's interpretation of the Utah Medical Practice Act. Accordingly, if the district court's interpretation of the Act was in error, its evidentiary ruling cannot be sustained. The practical effect of this circumstance is to subject the district court's evidentiary ruling to nondeferential review.

## DISCUSSION

¶ 8 The district court erred when it concluded as a matter of law that Dr. Schonfeld's activities undertaken on behalf of the plaintiffs violated the Utah Medical Practice Act.[2] We therefore reverse the district court's disqualification of Dr. Schonfeld on this ground.

 ¶ 9 We find that the Act's expert testimony exception allows experts who are licensed to practice medicine in other states but not in Utah, like Dr. Schonfeld, to conduct pretestimony medical evaluations in preparation for their forthcoming testimony as expert witnesses. The Act requires that physicians and surgeons be licensed in Utah in order to engage in the practice of medicine in Utah, subject to the enumerated exceptions. This requirement is designed "to protect the people of Utah from [the] open and unrestrained practice of medicine and surgery." *State v. Hoffman,* 558 P.2d 602, 605 (Utah 1976). While generally prohibiting the practice of medicine in Utah without a license, the Act enumerates enough exceptions to persuade us that the legislature is mindful that, although individual states have the authority to impose licensing standards that they deem appropriate, the United States enjoys nationwide standards for the education, training, and practice of its physicians.

 ¶ 10 Specifically, in addition to the general exemptions from licensure provided by the Division of Occupational and Professional Licensing Act,[3] the Act outlines several additional "practices or acts" an individual not licensed to practice medicine in Utah could perform without violating the Act. These individuals and "practices or acts" principally include:

(1) an individual offering emergency aid for no fee;

(2) an individual administering a domestic or family remedy;

(3) a person engaged in the sale of vitamins, health foods, dietary supplements or herbs not otherwise in violation of federal law;

(4) a person engaged in the good faith practice of a religious tenet or belief;

(5) an individual statutorily authorized to withdraw blood to determine drug or alcohol content;

(6) a medical assistant working under the direct supervision of a licensed physician or surgeon;

(7) an individual engaging in the practice of medicine who is licensed in another state and who is providing a public service for a non-commercial purpose without a fee; and

(8) an individual providing expert testimony in a legal proceeding.

*See* Utah Code Ann. § 58–67–305.

¶ 11 We find that the final exception applies here. In this case, there is no question that Dr. Schonfeld practiced medicine in Utah without a license when he held himself out as a physician, conducted physical examinations, allowed an unlicensed technician to administer pulmonary function tests, rendered medical advice, and diagnosed the plaintiffs with asbestos-related diseases. Dr. Schonfeld performed these "practices or acts" as "an individual providing expert testimony in a legal proceeding" and therefore did not violate the Act. Utah Code Ann. § 58–67–305(8). We agree with the plaintiffs that the expert witness exception not only allows individuals to hold themselves out as physicians and to offer medical opinions while physically occupying the witness chair

---

**2.** The Utah Medical Practice Act, Utah Code Ann. §§ 58–67–101 to –803 (2002 & Supp. 2005), is identical, in all relevant respects, to the Utah Osteopathic Medical Practice Act, Utah Code Ann. §§ 58–68–101 to –803 (2002 & Supp. 2005). All citations to the Utah Medical Practice Act, therefore, will also refer to all identical counterpart citations to the Utah Osteopathic Medical Practice Act.

**3.** Utah Code section 58–1–307(1) allows identified persons—including military physicians employed in the armed forces, students acting under appropriate supervision, and physicians licensed in other states who consult with licensed Utah physicians, among others—to "engage in the practice of their occupation or profession, subject to the stated circumstances and limitations, without being licensed under this title." Utah Code Ann. § 58–1–307(1) (2002 & Supp.2005).

in a legal proceeding, but that it allows potential experts to perform medical evaluations and similar medical "practices or acts" as part of their preparation to give their testimony.

¶ 12 Were we to adopt a pinched reading of the expert testimony exception, we would make the exception all but inaccessible to out-of-state physicians seeking to serve as expert witnesses. A medical expert will of necessity be required to assemble a wide range of data in the course of formulating an opinion. To prohibit activities of the nature engaged in by Dr. Schonfeld would be to subvert the purpose of the rules of evidence "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Utah R. Evid. 102.

¶ 13 The perception that expert witnesses required relief from operation of the Act itself suggests that the legislature believes that a medical expert would be called upon to perform activities that, without the aid of an exception, would be proscribed by the Act. Since there would be little occasion to believe that a physician would be held to account for a violation of the Act merely by testifying in a legal proceeding, it appears to us that the "practices or acts" contemplated to fall within the exception would be more expansive than actual trial testimony.

¶ 14 The defendants contend that holding oneself out as a physician is within the definition of the practice of medicine and that, therefore, the exception was only meant to allow experts to hold themselves out as physicians while giving testimony in a legal proceeding. This approach, however, does not track the plain language of the statute. Experts who solely offer testimony in legal proceedings do not "practice medicine" as that term is defined by the Act. The Act defines the "practice of medicine," in relevant part, as follows:

> (a) to diagnose, treat, correct, administer anesthesia, or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, or to attempt to

do so, by any means or instrumentality, and by an individual in Utah or outside the state upon or for any human within the state

> . . . .

> (d) to use, in the conduct of any occupation or profession pertaining to the diagnosis or treatment of human diseases or conditions in any printed material, stationery, letterhead, envelopes, signs, or advertisements, the designation "doctor," "doctor of medicine," "physician," "surgeon," "physician and surgeon," "Dr.," "M.D.," or any combination of these designations in any manner which might cause a reasonable person to believe the individual using the designation is a licensed physician and surgeon.

*Id.* § 58–67–102(8)(a), (d). At no point does the Act include within the definition of the practice of medicine an oral representation that a person is a physician licensed to practice medicine in another state but not in Utah. Subsection (d) includes within the definition of the "practice of medicine" certain representations about one's status as a physician, which might suggest that holding oneself out as a physician is the practice of medicine, but that section is limited to written materials "pertaining to . . . diagnosis or treatment." *Id.* § 58–67–102(8)(d). A physician providing expert testimony is not providing writings "pertaining to . . . diagnosis or treatment." *Id.* Rather, experts giving testimony in a legal proceeding would only orally state that they are physicians licensed in other states but not in Utah; they would then proceed to give their opinion about the physical state of their subjects. Therefore, with or without the expert testimony exception, it is not a violation of the Act for experts not licensed to practice medicine in Utah to orally hold themselves out as physicians while offering expert testimony in this state. Because offering expert testimony in a legal proceeding would not violate the Act independent of the expert testimony exception, we conclude that the expert testimony exception does more than just allow an expert to offer testimony in a proceeding.

¶ 15 We hold that the expert testimony exception permits expert witnesses to conduct examinations in preparation for their

forthcoming expert testimony. Pretestimony examinations of litigants will often be an essential part of an experts' preparation to provide helpful testimony to potential jurors. It is clear to us that the expert testimony exemption anticipates such examinations and shields those who perform them from the strictures of the Act.

¶ 16 We note, however, that this holding does not permit medical experts who are not licensed in Utah to enjoy the same privileges to practice as a physician duly licensed to practice medicine in this state. To qualify for the expert testimony exception, an unlicensed individual's practices or acts must be reasonably related to the testimony that they are preparing to give. Foreign experts must carefully design their diagnostic activities to produce medical data that will be helpful in preparing their testimony. And they must take care not to exceed the scope of the exception, leaving to others matters of treatment and disease management not customarily associated with the duties of an expert witness.

¶ 17 Our interpretation of the expert testimony exception does not undermine the important policy considerations underlying the Act. The defendants contend that the public policy behind the Act is to protect the citizens of Utah from the unlicensed practice of medicine. This statement is both true and incomplete. Exceptions to the Act clearly permit physicians licensed in other states but not in Utah to practice medicine here. For example, a physician not licensed in Utah may practice medicine in Utah in response to an emergency situation. *Id.* § 58–67–305(1). Also, supervised students or physicians employed by the military can engage in the full practice of medicine without seeking Utah licensure. Utah Code Ann. § 58–1–307(1). Thus, the Act does not represent a wholesale mistrust of nonlicensees, and its primary purpose is not to exclude all nonlicensees from practicing medicine within the state. In fact, the Act recognizes that, in some circumstances, Utah citizens will benefit from the services of nonlicensees practicing medicine in the state. We create no public policy

precedent, then, when we interpret the expert testimony exception to similarly extend to our citizens the benefit of fully developed expert testimony from physicians licensed to practice medicine in other states. Pretestimony examinations and testimony in legal proceedings are therefore exempted from the strictures of the Act.

¶ 18 Although we find that Dr. Schonfeld did not, in fact, violate the Act when he examined the plaintiffs in Utah without holding a Utah medical license, we hasten to add that a proposed expert's lack of licensure status in Utah in a particular field will seldom, standing alone, disqualify him or her under rule 702 of the Utah Rules of Evidence.[4] We note that this may not be a symmetrical proposition. In many instances, the possession of appropriate Utah credentials may be enough to qualify a proposed expert, but that is not to say that the lack of Utah credentials will automatically disqualify a potential expert witness.

¶ 19 Licensing standards are relevant to expert eligibility under rule 702 of the Utah Rules of Evidence but not determinative of it. The Utah Constitution "vests in the Utah Supreme Court both the authority and the duty to 'adopt rules of procedure and evidence to be used in the courts of the state.'" *Burns v. Boyden*, 2006 UT 14, ¶ 15 n. 3, 133 P.3d 370 (quoting Utah Const. art. VIII, § 4). A statutory scheme promulgated by the legislature may intrude on that constitutional grant of authority only under limited circumstances not present here. *Id.* (citing Utah Const. art. VIII, § 4).

¶ 20 We accordingly reverse the district court's grant of summary judgment and remand for further proceedings consistent with the principles established in this opinion.

¶ 21 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING'S opinion.

---

4. A substantially revised version of Utah Rule of Evidence 702 is currently pending before this court. If adopted, it will not alter the application of the issues raised in this appeal.