2010 UT App 85

**Buu NGUYEN, Plaintiff and Appellant,**

v.

**IHC HEALTH SERVICES, INC., dba Primary Children's Medical Center; University of Utah Hospitals and Clinics; University of Utah; State of Utah; and Pulmonetic Systems, Inc., Defendants and Appellees.**

No. 20080738–CA.

Court of Appeals of Utah.

April 22, 2010.

Matthew H. Raty, Sandy, for Appellant.

Robert G. Wright, Brandon B. Hobbs, and Zachary E. Peterson, Salt Lake City, for Appellee Primary Children's Medical Center.

David G. Williams and Bradley R. Blackham, Salt Lake City, for Appellees University of Utah Hospitals and Clinics, University of Utah, and State of Utah.

Before Judges McHUGH, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Buu Nguyen appeals the district court's exclusion of his expert and the resulting dismissal of his claims for negligence and failure to obtain informed consent, as well as the court's grant of summary judgment on his intentional infliction of emotional distress and punitive damages claims. We affirm the district court's decisions, except as concerns the claim premised on failure to obtain informed consent. With respect to that claim, we reverse and remand.

## BACKGROUND

¶ 2 Nguyen was the father of one-year-old Derek Nguyen. Derek was admitted into the pediatric intensive care unit (PICU) at Primary Children's Medical Center (PCMC) as a result of severe injuries he sustained in a car accident. Dr. Madeline Witte, a University of Utah School of Medicine employee, was responsible for Derek's care while at PCMC. During Derek's treatment, Dr. Witte

concluded that a CT scan was necessary to determine if bleeding or a blood clot in Derek's brain was causing his deteriorating condition. The CT scanner was located on a different floor of the hospital, so a transport ventilator was used to facilitate Derek's transfer. The ventilator was a sales model of the unit that PCMC was considering purchasing. Derek was placed on the ventilator for approximately an hour before the transport and was transported only after it was determined that the ventilator would provide the support needed. While returning to the PICU after the CT scan, the ventilator lost power. Resuscitation attempts failed, and Derek died.

¶ 3 PCMC had developed a procedure to test and evaluate equipment it was considering for purchase, such as the ventilator. The process included identifying the type of appropriate test-patient and the need to obtain consent from the patient's parent before the equipment was used. Dr. Witte acknowledged in her deposition that the ventilator was only supposed to be used on "moderately ill" patients. She also stated that while Derek's father was told "that there was some risk involved" in transporting Derek, he was not told that the ventilator was a test model. According to Dr. Witte, she used the ventilator not as part of the testing process, but only because the ventilator was the only machine "available that [she] had confidence could deliver the level of support that Derek was requiring." However, several people accompanied Derek as he was moved to observe the ventilator in action. Significantly, this group included a representative from the ventilator manufacturer.

¶ 4 Following an investigation regarding the ventilator's malfunction, Dr. Witte met with Nguyen and told him that the ventilator quit working because "a screw had made contact with the motherboard resulting in shutdown of the ventilator." Dr. Witte also told Nguyen "that the malfunction of the ventilator clearly played a role in the timing of [Derek]'s death" but that Derek's severe injuries "could very possibly have resulted in

his demise even in the absence of a ventilator malfunction."

¶ 5 Nguyen filed a complaint against IHC Health Services, Inc., doing business as PCMC; University of Utah Hospitals and Clinics; University of Utah; and the State of Utah (collectively, Defendants) alleging negligence, failure to obtain informed consent, intentional infliction of emotional distress, and recklessness that justified punitive damages.[1] After a July 23, 2008 hearing, the district court granted Defendants' motions for partial summary judgment on the claims of intentional infliction of emotional distress and punitive damages. The court also granted Defendants' motion to exclude Dr. John Goldenring from testifying as Nguyen's expert. Because "[Nguyen] ha[d] failed to offer admissible expert testimony to establish either a breach of the applicable standard of care or causation," the court granted Defendants' summary judgment motion for the remaining claims of negligence and failure to obtain informed consent. Nguyen appeals the court's rulings.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Nguyen asserts that the trial court incorrectly granted summary judgment on his claims. A court shall grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue of material fact. Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts

---

1. Nguyen's complaint also included claims of strict product liability, negligence, and breach of warranty against Pulmonetic Systems, Inc., the ventilator's manufacturer. However, these claims were dismissed after Nguyen reached a settlement with Pulmonetic Systems, Inc.

showing that there is a genuine issue for trial.

*Orvis v. Johnson,* 2008 UT 2, ¶ 18, 177 P.3d 600 (emphasis in original) (citations and internal quotation marks omitted). "We evaluate the evidence in the light most favorable to the party opposing summary judgment," *Doctors' Co. v. Drezga,* 2009 UT 60, ¶ 9, 218 P.3d 598, and "review a district court's decision to grant summary judgment for correctness, giving no deference to the district court," *Raab v. Utah Ry. Co.,* 2009 UT 61, ¶ 10, 221 P.3d 219.

¶ 7 Nguyen also argues that the court improperly excluded Dr. Goldenring from testifying as an expert. "District courts generally enjoy considerable latitude in making evidentiary rulings, including rulings concerning the qualifications of expert witnesses under rule 702 of the Utah Rules of Evidence. In most instances, therefore, we will disturb such rulings only when the district court has exceeded its discretion." *Carbaugh v. Asbestos Corp.,* 2007 UT 65, ¶ 7, 167 P.3d 1063.

## ANALYSIS

### I. Intentional Infliction of Emotional Distress

 ¶ 8 The district court properly granted Defendants' summary judgment motion on Nguyen's claim for intentional infliction of emotional distress. Nguyen's complaint alleged that Defendants acted outrageously by "using [Derek] as a test subject for, and as part of a sales demonstration of the Pulmonetic ventilator," an untested ventilator, without obtaining Nguyen's consent. In responding to Defendants' summary judgment motion, Nguyen claimed that Defendants did not follow their own guidelines established for testing the ventilator and that "[n]o emergency existed to justify disregard of the protocols."

 ¶ 9 Defendants argued in their summary judgment memoranda that even if all of Nguyen's assertions could be proven, the conduct as described did not establish that Defendants acted outrageously, as is required to prove a claim of intentional infliction of emotional distress,[2] *see Oman v. Davis Sch. Dist.,* 2008 UT 70, ¶ 51, 194 P.3d 956. "To be considered outrageous, [t]he conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair. Furthermore, [a]n act is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal."[3] *Franco v. Church of Jesus Christ of Latter-day Saints,* 2001 UT 25, ¶ 28, 21 P.3d 198 (alterations in original) (citations and internal quotation marks omitted). Given Utah case law, the district court

---

**2.** "Due to the highly subjective and volatile nature of emotional distress and the variability of its causations, the courts have historically been wary of dangers in opening the door to recovery therefor." *Oman v. Davis Sch. Dist.,* 2008 UT 70, ¶ 51, 194 P.3d 956 (citation and internal quotation marks omitted).

In order to properly state a claim for the tort of intentional infliction of emotional distress, a plaintiff must plead facts that demonstrate that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Id.* (emphasis in original) (citation and internal quotation marks omitted).

**3.** Nguyen cites authority for the proposition that the jury, not the court, should determine if conduct is outrageous. *See Gulbraa v. Corporation of the Pres. of the Church of Jesus Christ of Latter-day Saints,* 2007 UT App 126, ¶ 23, 159 P.3d 392. However, "[i]f the trial court determines that a defendant's conduct was not outrageous as a matter of law, then the plaintiff's claim fails, and a court may properly grant the defendant summary judgment on an intentional infliction of emotional distress claim." *Oman v. Davis Sch. Dist.,* 2008 UT 70, ¶ 52, 194 P.3d 956 (citation and internal quotation marks omitted). Thus, the court makes an initial determination "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* (citation and internal quotation marks omitted). *Accord Schuurman v. Shingleton,* 2001 UT 52, ¶ 23, 26 P.3d 227. "Where reasonable men may differ, it is for the jury ... to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Oman,* 2008 UT 70, ¶ 52, 194 P.3d 956 (citation and internal quotation marks omitted).

**534**

correctly ruled that any failure to follow the testing protocol under the circumstances of this case did not "amount[ ] to evidence of outrageous conduct." [4]

¶ 10 Furthermore, the district court correctly determined that no evidence established that Defendants intended to cause emotional distress. *See generally Oman,* 2008 UT 70, ¶ 51, 194 P.3d 956. In responding to Defendants' motions for summary judgment, Nguyen did not dispute that "Dr. Madeline Witte determined that a CT scan was critical to assess Derek's ongoing problems" and that "[b]efore Derek was transported to the CT scanner, he was placed on the Pulmonetics ventilator for approximately an hour to insure that the ventilator would provide Derek with the requisite levels of

support." This evidence demonstrates, as a matter of law, that Defendants' actions in using the ventilator were not outrageous or done to intentionally cause emotional harm to Nguyen. Therefore, the district court correctly granted Defendants' summary judgment motions on the intentional infliction of emotional distress claims.

## II. Punitive Damages

■ ¶ 11 The district court also properly granted PCMC's summary judgment motion on Nguyen's punitive damages claim. Nguyen argued that summary judgment on this claim was inappropriate because PCMC acted in "knowing and reckless disregard [of Derek's] safety" by attaching the critically ill

---

4. There is admittedly limited case law in Utah exploring intentional infliction of emotional distress in a medical setting. The leading case is *Sorensen v. Barbuto,* 2006 UT App 340, 143 P.3d 295, aff'd, 2008 UT 8, 177 P.3d 614. In *Sorensen,* we concluded that, where the plaintiff's former physician "not only communicated ex parte with defense counsel [but] actually became a paid advocate for [the plaintiff]'s adversary," the alleged conduct was sufficient "to maintain an action for intentional infliction of emotional distress." 2006 UT App 340, ¶ 21, 143 P.3d 295 (citation and internal quotation marks omitted). Additionally, the Utah Supreme Court has held, albeit in a case involving a claim for negligent infliction of emotional distress, that mistakenly using the wrong donor's sperm did not create sufficient emotional distress to establish such a claim. *See Harnicher v. University of Utah Med. Ctr.,* 962 P.2d 67, 68, 72 (Utah 1998). But appellate opinions that have arisen in other contexts make clear, as a matter of law, that conduct must be more outrageous than was the failure to follow the testing protocol as alleged in this case. *See Jackson v. Brown,* 904 P.2d 685, 687–88 (Utah 1995) (determining that proposing marriage, allowing a ceremony to be planned, and then withdrawing the promise to marry "only hours before the time scheduled for the ceremony" because the defendant had been married to another person the entire time "may very well be considered outrageous") (citation and internal quotation marks omitted); *Pentecost v. Harward,* 699 P.2d 696, 700 (Utah 1985) ("[A]llegations that [her landlord] 'forcefully' evicted her and her children when she held the premises under lease and had tendered the rent due, that he retained all of her personal possessions without contractual or judicial sanction, and that all of this was done intentionally and with malice certainly would state ... a claim" for intentional infliction of emotional distress.); *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 345, 347 (1961) (allegation that "the defendant repeatedly

and persistently called [the plaintiff] by phone at various hours including late at night, soliciting her to have illicit sexual relations with him; and that on one occasion [he] came to her residence in connection with such a solicitation and made an indecent exposure of his person" was sufficient to withstand dismissal); *Gulbraa v. Corporation of the Pres. of the Church of Jesus Christ of Latter-day Saints,* 2007 UT App 126, ¶¶ 20, 23–24, 159 P.3d 392 (determining that a plaintiff's allegations that church officials "conspired with federal fugitives, wanted on kidnapping charges, to conceal the ... [C]hildren and to interfere with Plaintiff's custodial and parental rights," and "knowingly making false representations to ... Plaintiff regarding [the C]hildren's [c]hurch activities" was sufficiently outrageous for Plaintiff's claim to be heard by the jury) (alterations and omissions in original). *See also Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶ 55, 116 P.3d 323 ("A mere allegation of improper filing of a lawsuit or the use of legal process against an individual does not state a claim for outrageous or intolerable conduct[.]") (citation and internal quotation marks omitted); *Franco v. Church of Jesus Christ of Latter-day Saints,* 2001 UT 25, ¶ 29, 21 P.3d 198 (referring a sexually abused child to a practitioner that, unbeknownst to the referrer, was not licensed, was not considered outrageous conduct); *Covert v. Kennecott Copper Corp.,* 23 Utah 2d 252, 461 P.2d 466, 468–69 (1969) (determining that "mutilation or desecration of" a body done while extracting the body in an attempt to save the person's life does not constitute intentional infliction of emotional distress); *Robertson v. Utah Fuel Co.,* 889 P.2d 1382, 1389 (Utah Ct.App.1995) ("The mere fact that [the plaintiff] was discharged, coupled with the fact that he was purportedly required to discuss his drug addiction with his subordinates, does not rise to the level of outrageousness or intolerable conduct necessary to establish a prima facie claim of emotional distress."), *cert. denied,* 899 P.2d 1231 (Utah 1995).

and unstable child to the untested ventilator for purposes of evaluating the ventilator, by not consulting with other members of Derek's health care team about using the ventilator, by not following the established protocol for using the ventilator, and by not informing Nguyen that they were going to use an untested ventilator on Derek. We agree with the district court and PCMC that even if all those facts were established, they would not, as a matter of law, justify a punitive damages award because they would not establish that PCMC's actions amounted to "conduct that manifest[ed] a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah Code Ann. § 78B–8–201(1)(a) (2008).[5]

¶ 12 Utah law has long recognized that "[s]imple negligence will never suffice as a basis upon which [punitive] damages may be awarded. 'Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.' " *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1186 (Utah 1983) (quoting Restatement (Second) of Torts § 908 cmt. b at 465 (1979)). "[T]he defendant must either know or should know 'that such conduct would, in a high degree of probability, result in substantial harm to another,' and the conduct must be 'highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.' " *Id.* at 1187 (citations omitted). The facts alleged by Nguyen, when considered along with the undisputed facts previously identified, could at most prove negligence. The facts do not establish willful, malicious, or reckless conduct. The grant of summary judgment on the punitive damages claim was therefore proper.[6]

### III. Exclusion of Nguyen's Expert

¶ 13 The district court also properly excluded Dr. Goldenring as an expert on

the issues of the applicable standard of care and causation. "Practitioners in one specialty are not ordinarily competent to testify as experts on the standard of care applicable in another specialty." *Arnold v. Curtis*, 846 P.2d 1307, 1310 (Utah 1993).

> [A] medical expert witness brought in to testify on the applicable standard of care, and whose specialty differs from that of the allegedly negligent doctor, must show that he or she is knowledgeable about the applicable standard of care or that the standard of care in the expert's specialty is the same as the standard of care in the alleged negligent doctor's specialty.

*Dikeou v. Osborn*, 881 P.2d 943, 947 (Utah Ct.App.1994).

¶ 14 Dr. Goldenring practiced general pediatrics and had never worked as a critical care physician in a PICU. Although he has provided some emergency care in hospitals as an attending pediatrician, he specified that he always worked in the "team context" with specialists because "[i]t's not appropriate for a general pediatrician to take on a really bad case ... without getting lots of help." Since 1994 or 1995, Dr. Goldenring has not used any active hospital privileges and had primarily worked for HMOs and individual practice associations as an administrator or consultant. He also had no experience with the ventilator used in this case, is not an expert on ventilators generally, and had no experience writing test protocols for hospital equipment. In addition, Dr. Goldenring frankly conceded in rendering his causation opinions that he was unable to quantify Derek's chance of survival absent the ventilator failure. For these reasons, we affirm the district court's decision to exclude Dr. Goldenring from testifying as an expert regarding the applicable standard of care and causation.

**5.** According to the cited provision,

> punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

Utah Code Ann. § 78B–8–201(1)(a) (2008).

**6.** The district court also ruled that punitive damages were inappropriate against the University of Utah based on the Governmental Immunity Act, *see* Utah Code Ann. § 63G–7–201 (2008). Nguyen does not challenge this ruling on appeal.

## IV. Medical Negligence

¶ 15 Because Dr. Goldenring was not qualified to testify about the essential elements of Nguyen's medical negligence claim, the district court properly granted Defendants summary judgment on the claim.[7] Without an expert, Nguyen simply would be unable to prove that the standard of care had been breached. *See Chadwick v. Nielsen,* 763 P.2d 817, 821 (Utah Ct.App.1988) ("Due to the technical and complex nature of a medical doctor's services, expert medical testimony must be presented at trial in order to establish the standard of care and proximate cause—except in unusual circumstances."); *Hoopiiaina v. Intermountain Health Care,* 740 P.2d 270, 271 (Utah Ct.App.1987) (noting importance of expert testimony in medical malpractice actions "to establish: 1) the standard of care, 2) defendant's failure to comply with that standard, and 3) that defendant caused plaintiff's injuries") (citations omitted).

## V. Failure to Obtain Informed Consent

¶ 16 The district court improperly dismissed Nguyen's claim for failure to obtain informed consent. The court based its dismissal on the fact that Nguyen's expert could not "expertly address what information should or should not have been conveyed about the overall risks and benefits of the transport." Nguyen argues on appeal, and we agree, that he did not need an expert to establish Defendants' failure to obtain informed consent to use the ventilator.[8]

¶ 17 Often, an expert is needed to determine if the information provided in the course of securing informed consent was adequate. *See generally Goddard v. Hickman,* 685 P.2d 530, 533 (Utah 1984) ("Evidence of what information a patient should have to be able to give informed consent was given by the plaintiff's expert."); *Chadwick,* 763 P.2d at 821 n. 4 (stating that "at a minimum, expert testimony is required in cases alleging a lack of informed consent to prove the materiality of the risk involved"). However, in this case, Nguyen bases his claim not on perceived deficiencies in the disclosures made, but on the complete absence of any disclosure about the untested nature of the ventilator and the risks of its use. If Nguyen's theory had been that disclosures were made to him but the disclosures were misstated or did not include material information, such as the fact that FDA approval was relatively recent or that there was a possibility a screw might come loose and cause the ventilator to malfunction, then it may well be that Nguyen would need an expert to establish exactly what information he was entitled to have disclosed to him. *See Chadwick,* 763

---

7. Ordinarily when a defendant moves for summary judgment, the defendant must show that no material facts are in dispute and the defendant is entitled to prevail as a matter of law. *See* Utah R. Civ. P. 56(c); *Eagar v. Burrows,* 2008 UT 42, ¶¶ 13, 15–16, 191 P.3d 9 (discussing burdens of proof when defendant moves for summary judgment). Medical negligence cases are often on a somewhat different footing. In order to prove the applicable standard of care, the breach of that standard, and that the breach was the proximate cause of the injury, an expert is ordinarily needed. *See Hoopiiaina v. Intermountain Health Care,* 740 P.2d 270, 271 (Utah Ct.App.1987). With that requirement in mind, Defendants claim that they are entitled to prevail because Nguyen would be legally unable to make out a prima facie case without an expert, meaning his claim would fail as a matter of law. We have previously recognized that summary judgment is appropriate in cases where the plaintiff lacks required expert testimony and there is no way that the plaintiff can make out a prima facie case for medical negligence without such testimony. *See id.* at 271.

8. For a patient to recover damages from a health care provider in an action based upon the provider's failure to obtain informed consent, the patient must prove the following:
 (a) that a provider-patient relationship existed between the patient and health care provider;
 (b) the health care provider rendered health care to the patient;
 (c) the patient suffered personal injuries arising out of the health care rendered;
 (d) the health care provider rendered carried with it a substantial and significant risk of causing the patient serious harm;
 (e) the patient was not informed of the substantial and significant risk;
 (f) a reasonable, prudent person in the patient's position would not have consented to the health care rendered after having been fully informed as to all facts relevant to the decision to give consent; and
 (g) the unauthorized part of the health care rendered was the proximate cause of personal injuries suffered by the patient.
 Utah Code Ann. § 78B–3–406(1) (2008).

P.2d at 821 n. 4. Instead, Nguyen claims that he was entitled to know one basic fact, the obvious importance of which does not require an expert to explain—i.e., that this ventilator was unproven and was being tested by the hospital to determine if it should be purchased.[9]

■ ¶ 18 "Where the physician fails to disclose to his patient *any* information concerning a material fact, there is no question of skill and judgment, no question of practice beyond the knowledge of laymen which must be established through expert testimony." *Nixdorf v. Hicken*, 612 P.2d 348, 355 (Utah 1980) (emphasis added). An expert is not needed to establish that Nguyen should have been informed that the ventilator was in the hospital on a trial basis for experimental purposes; that it was still under evaluation; that it was actually intended for "life flight" transport; and, most importantly, that the ventilator had not once been used on a patient. *Cf. id.* at 352 ("[E]xpert testimony is unnecessary to establish the standard of care owed the plaintiff where the propriety of the treatment received is within the common knowledge and experience of the layman. The loss of a surgical instrument or other paraphernalia, in the operating site, exemplifies this type of treatment."). Because there was a total absence of any disclosure about the ventilator's experimental status and because the court's sole rationale given for granting summary judgment was the absence of expert testimony, we reverse the grant of summary judgment in favor of Defendants on the claim of failure to obtain informed consent. On that claim, we remand for trial or such other disposition as may now be proper.

## CONCLUSION

¶ 19 The district court properly granted summary judgment to Defendants on Nguyen's claims of intentional infliction of emotional distress, punitive damages, and negligence. And the district court properly excluded Nguyen's expert. However, the district court erred in relying on the lack of expert testimony in granting summary judgment on Nguyen's claim for failure to obtain informed consent. That claim is remanded to the trial court. The parties will bear their own costs on appeal.

¶ 20 I CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge.

THORNE, Judge (concurring in part and dissenting in part):

¶ 21 I concur in parts III, IV, and V. I respectfully dissent from parts I and II. I disagree with the majority opinion that the district court properly granted Defendants' summary judgment motions on Nguyen's claim for intentional infliction of emotional distress and punitive damages claim.

¶ 22 In particular, I disagree with the majority's conclusion that the district court correctly granted Defendants' summary judgment motion for intentional infliction of emotional distress because no evidence existed to show, as a matter of law, that Defendants intended to cause emotional distress or that the conduct was outrageous. *See supra* ¶¶ 9, 10. The evidence in this case is such that a reasonable person might conclude that Defendants' conduct has been sufficiently extreme and outrageous to result in liability. Under the circumstances of this case, it would be possible for a jury to reasonably find that Defendants acted in an outrageous manner.

¶ 23 The evidence before the trial court included testimony that at the time of its use on Derek the sales model ventilator had not been tested, attached to, or previously used to transport anyone; a committee was assembled to test, evaluate, and acquire a new life-flight transport ventilator (the CTM committee); a clinical evaluation previously scheduled had not taken place as arranged; Defendants' agents were subject to rules governing use of the sales model, which prohibited use on any critically-ill or medically unstable child without obtaining parental

---

9. We note that the record shows that some general information was given to Nguyen about the need for Derek to be transported to receive a CT scan and "that there was a risk involved with this process." However, it appears even from Defendants' account that no information was given to Nguyen regarding the fact that the ventilator was not regular hospital equipment and that it was being tested by PCMC so it could evaluate whether the ventilator should be purchased.

consent; Derek was critically ill and medically unstable, and Defendants' agents did not obtain the consent of Derek's father; Defendants' agent Dr. Madeline Witte, a CTM committee member, decided to use the sales model on Derek; Defendant's agent Tammy Bleak, chairperson of the CTM committee, had a duty to assess the reliability of the sales model for patient use pursuant to the hospital's testing and evaluation requirements before allowing its use on a patient outside of the testing and evaluation parameters; the sales model was used on Derek in the presence of the salesman and personnel assigned to evaluate the sales model; Ramsey Worman, a CTM committee member, testified that he felt inspection of the ventilator was inadequate and he disagreed with the decision to test it on any patients; and during transport the sales model malfunctioned and Derek died.

¶ 24 Based on this evidence reasonable minds could differ on whether Defendants' actions would "evoke outrage or revulsion" sufficient to be considered outrageous conduct. *See Oman v. Davis Sch. Dist.,* 2008 UT 70, ¶ 53, 194 P.3d 956 (internal quotation marks omitted). A reasonable jury could determine that Defendants' agents' actions were motivated by the need to test the sales model and in complete disregard of the potential risk to the critically-ill child who may not be able to tolerate a brief interruption, and conclude that such actions constituted outrageous conduct. "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Id.* ¶ 52 (internal quotation marks omitted). As a result, I disagree with the majority that Defendants were entitled to judgment as a matter of law.

¶ 25 I also disagree with the majority's determination that the district court properly granted Defendants' summary judgment motion on Nguyen's punitive damages claim. Based on the same facts and conduct summarized above, a reasonable jury could determine that Defendants' actions to pursue testing of the sales model despite the risks to the critically-ill child were "willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others," *see* Utah Code Ann. § 78B–8–201(1)(a) (2008), as required for Nguyen to prove he is entitled to punitive damages. Therefore, I would hold that the grant of summary judgment on the punitive damages claim was also improper.

¶ 26 I would reverse and remand the matter for a trial on the merits of Nguyen's claims of intentional infliction of emotional distress and punitive damages.