2009 UT 60

The DOCTORS' Company, Plaintiff and Appellant,

v.

G. Gregory DREZGA, MD; and Heidi J. Judd, personally and as the natural parent and guardian of Athan Montgomery, for and on behalf of Athan Montgomery, Defendants and Appellees.

No. 20080514.

Supreme Court of Utah.

Sept. 15, 2009.

Jaryl L. Rencher, Salt Lake City, for plaintiff.

Paul C. Burke, David C. Biggs, Kenneth D. Lougee, Salt Lake City, for defendants.

DURHAM, Chief Justice:

¶ 1 This case comes before us on appeal from a grant of summary judgment by the

district court. Appellant, The Doctor's Company (TDC), argues that the district court erred in holding that its malpractice insurance policy could not be invalidated based on the misrepresentations and noncooperation of the insured doctor. Appellant further challenges the district court order that it pay attorney fees for an absent and nonindigent Appellee. We affirm.

## BACKGROUND

¶ 2 In 1996, Appellee Dr. Gregory Drezga, an obstetrician-gynecologist, applied to TDC for a medical malpractice insurance policy. In his application, Drezga warranted that he had not been the subject of any malpractice claims over the preceding ten years. This was apparently a misrepresentation, as Drezga had in fact been the subject of three such malpractice claims. But since TDC did not discover the misrepresentation until four years later, it issued Drezga the malpractice policy.

¶ 3 In May 1997, Drezga's use of forceps during a birth resulted in severe brain damage to Athan Montgomery, an Appellee in this case.[1] Sometime thereafter, but before any legal proceedings began, Drezga disappeared. His whereabouts remain unknown. Efforts to locate Drezga have been unsuccessful for more than a decade.

¶ 4 Athan's mother, Helen Judd, filed a medical malpractice suit against Drezga in 1998. TDC initially hired counsel on Drezga's behalf to defend against the claim. While the malpractice litigation was ongoing, TDC filed a separate action against the still-absent Drezga. The action, which named Judd and Athan as co-defendants, sought a declaration that the insurance contract was invalid and that TDC should therefore be excused from defending Drezga or paying any judgment on his behalf.

¶ 5 TDC advanced two arguments in this action. First, TDC claimed that the misrepresentations made by Drezga on the insurance application gave TDC the right to rescind the contract. Second, TDC argued that Drezga's disappearance constituted a failure to cooperate with TDC in defending the malpractice suit. These claims were litigated over the course of eight years before two different district court judges.[2] In September 2000, TDC moved for summary judgment on the noncooperation claim. The district court denied the motion, holding that TDC failed to submit undisputed evidence that Drezga had "willfully and intentionally" breached the cooperation requirement in the policy.[3] Judge Lewis further held that TDC could not retroactively avoid liability because such action would deny recovery to an innocent third party.

¶ 6 The malpractice suit went to trial in December 2000 and resulted in a judgment against Drezga worth nearly $2.3 million. The judgment was later reduced to $1.3 million in compliance with a statutory cap on damages, a decision this court affirmed. *Judd v. Drezga*, 2004 UT 91, ¶ 40, 103 P.3d 135. Realizing that recovery would be impossible if TDC succeeded in its continuing efforts to void or rescind the insurance contract, Judd asked the district court to appoint counsel to represent Drezga's interests in the case. Despite ethical concerns raised by Drezga's absence, the district court appoint-

---

1. Athan Montgomery's given name is spelled variously in the record. For consistency, we employ the same spelling we have used the previous two times that matters relating to this case have come before us. *See Judd v. Drezga*, 2004 UT 91, 103 P.3d 135; *Burke v. Lewis*, 2005 UT 44, 122 P.3d 533. In addition, throughout this opinion we refer to Athan, who is now 12 years old, by his given name only. This is to prevent confusion between Appellee and the plaintiff in *Montgomery v. Preferred Risk Mutual Insurance Co.*, 17 Utah 2d 333, 411 P.2d 488 (1966), a key precedent in this case.

2. The case was initially heard in the district court by Judge Leslie Lewis, who left the bench in 2006. The case was then transferred to Judge William Barrett, who presided until its resolution in 2008.

3. TDC requested leave from this court to provide supplemental materials regarding the noncooperation claim and other matters on June 15, 2009, more than a month after we heard oral arguments. Because this was an exceedingly belated attempt to introduce new evidence, we decline to consider these supplemental materials as part of the record. *See State v. Law*, 2003 UT App 228, ¶ 2, 75 P.3d 923 (noting that motions to supplement the record are inappropriate if used to "introduce new material into the record").

ed counsel, a ruling that also was affirmed by this court. *Burke v. Lewis*, 2005 UT 44, ¶ 38, 122 P.3d 533. In addition, the district court ordered TDC to pay attorney fees for Drezga's representation. In *Burke*, we declined to address the correctness of this part of the order. *Id.* ¶ 16 n. 3.

¶ 7 Once the issue of court-appointed counsel for Drezga was settled, Appellees Judd and Drezga moved for summary judgment on TDC's action for declaratory relief. In May 2008, the district court granted the motion. The insurance contract, according to Judge Barrett's ruling, gave TDC the option of cancellation or rescission of Drezga's policy. Because the evidence indicated that TDC chose cancellation, the district court held that TDC could not later rescind the same policy. Since cancellation has only a prospective effect, and did not occur here until after Athan's birth, the district court held that TDC could not avoid responsibility for the malpractice judgment. This court has jurisdiction under Utah Code section 78A–3–102(3)(j)(2008).

## ISSUES AND STANDARD OF REVIEW

¶ 8 This case raises three issues: (1) whether the district court erred in granting summary judgment based on its holding that TDC had waived its right to rescission; (2) whether the district court erred in granting summary judgment on the ground that Drezga's alleged noncooperation was insufficient to void the insurance contract; and (3) whether the district court had the authority to order TDC to pay the fees of Drezga's court-appointed counsel.

¶ 9 A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). We evaluate the evidence in the light most favorable to the party opposing summary judgment. *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998). The district court's construction of contract language is given no particular weight and is reviewed for correctness as a matter of law. *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988). The question of whether the district court has authority to order TDC to pay the fees of court-appointed counsel for an absent, nonindigent defendant is reviewed for correctness, granting "no deference to the district court's legal conclusions." *Burke v. Lewis*, 2005 UT 44, ¶ 15, 122 P.3d 533.

## ANALYSIS

¶ 10 In reviewing the district court's grant of summary judgment, we examine whether the insurance contract allowed Appellant to rescind Drezga's policy after first taking action to cancel it. We then consider two matters relevant to TDC's noncooperation claim: first, whether TDC met the burden of proof required for a noncooperation claim; and second, whether the contract allowed rescission of coverage in the event that noncooperation was demonstrated. Finally, we analyze whether the order requiring TDC to pay attorney fees for Drezga's court-appointed counsel fell within the inherent equitable authority of the district court.

## I. THE INSURANCE CONTRACT PREVENTS TDC FROM RESCINDING THE POLICY AFTER FIRST CANCELLING IT

¶ 11 TDC argues that the district court erred in granting summary judgment because it failed to recognize TDC's statutory and contractual right of rescission in light of Drezga's alleged misrepresentations and failure to cooperate. We disagree and conclude that TDC is barred from rescinding Drezga's insurance policy for two reasons. First, the contract uses clearly disjunctive language, indicating that TDC can either rescind or cancel the policy, but cannot do both. Because TDC's own pleadings indicate that it first cancelled the policy, we hold that it waived whatever right of rescission it may have possessed. Second, even when viewed in the light most favorable to TDC, the contract language regarding the consequences of misrepresentation is ambiguous. This court has long followed the rule that any such ambiguity must be resolved in favor of the insured party; thus, the district court did not err in granting summary judgment to Appellees.

¶ 12 As always, when presented with a contractual obligation we first look to

the contract and construe its terms to give effect to the intentions of the parties. When possible, of course, these intentions "should be gleaned from an examination of the text of the contract itself." *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988). We construe insurance contracts by considering their meaning "to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy." *Id.* at 858–59 (quoting *Auto Lease Co. v. Cent. Mut. Ins. Co.*, 7 Utah 2d 336, 325 P.2d 264, 266 (1958)). Furthermore, "any ambiguity or uncertainty in the language of an insurance policy must be resolved in favor of coverage." *Id.* at 858. This rule of strict construction is justified by "the need to afford the insured the protection he or she endeavored to secure by paying premiums." *Id.* Ambiguity exists if a provision of a contract "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 (internal quotation marks omitted).

 ¶ 13 The contract between Drezga and TDC sets forth the consequences of misrepresentation in two places. First, under Part 1 of the "General Provisions" section, the contract states that if an applicant misrepresents any material fact, then "this policy will be void and the Exchange will rescind *or* cancel" the policy. (Emphasis added). Second, under Part 11 of the same section, the contract indicates that TDC "may cancel your policy at any time" in case of "fraud or material misrepresentation." The contract then explains that should cancellation occur TDC will notify the insured party using "a written notice by certified mail to [the] latest address shown on the Exchange's records." Such action has prospective effect, since "the date for cancellation will be 60 days from the date on the written notice."

¶ 14 The record shows that TDC took action to cancel the contract once Drezga's misrepresentations became known. In its amended complaint, TDC confirmed that it "canceled the policy of insurance with Dr. Drezga by mailing a notification regarding the same to his last known address." [4] The use of the word "canceled," and the fact that TDC followed the procedure outlined in the contract for cancellation, both indicate that TDC deliberately selected this course of action.

 ¶ 15 TDC argues that its cancellation of Drezga's policy did not waive its right of rescission; in other words, that the two actions are not mutually exclusive. The Utah Court of Appeals has held that, absent an express waiver by an insurance company, a contractual right to rescission is forfeited only if the insurer's "course of conduct demonstrates that it intended to relinquish that right." *Cont'l Ins. Co. v. Kingston*, 2005 UT App 233, ¶ 9, 114 P.3d 1158. To determine whether a waiver has occurred, the court must consider the "totality of the circumstances." *Id.* ¶ 11 (internal quotation marks omitted). A waiver may be implied by "any substantial act that recognizes the contract as in force." *Id.* ¶ 14. Once the right of rescission has been relinquished, an insurer is "thereafter prohibited from asserting that right." *Id.* ¶ 9. TDC contends that its actions demonstrate that it reserved, rather than relinquished, the right of rescission.

 ¶ 16 Given the clearly disjunctive language in this contract, we do not find this argument persuasive. We need not decide here whether cancellation and rescission are in all cases mutually exclusive. It may be permissible for an insurance company to include contractual language allowing it to cancel a policy, thus limiting its future risk, while its right to rescind the same policy is being litigated. In this case, however, the language of the contract does not so provide. The policy limits TDC's options: it may cancel, or it may rescind. TDC is essentially

---

4. In August 2007, TDC requested permission to file a second amended complaint to "clarify" its request for rescission, presumably by deleting any reference to cancellation. The district court did not grant permission for the amendment.

Even if it had, an attempt to recast an act of cancellation as something different more than seven years after the fact would not persuade us to hold differently here.

asking us to read the "or" as "and"; we decline to do so. When the language of a contract creates a choice between cancellation or rescission, pursuing the former is a course of conduct that demonstrates waiver of the latter.[5]

¶ 17 TDC also contends that the district court erred by failing to give effect to the contract language as a whole. TDC points specifically to Part 1 of the contract's "General Provisions" section, which contains not only the "rescind or cancel" language but states in its entirety, *"this policy will be void* and the Exchange will rescind or cancel" the policy in cases of material misrepresentation. (Emphasis added). This, TDC argues, gives it a contractual right to seek rescission of the policy. But the "void" language does not help TDC's case, because its primary impact makes the consequence of misrepresentation unclear. The language "will be void" suggests that, in case of misrepresentation, the contract will be *void ab initio*, a result that would be contrary to Utah law. *Baldwin v. Burton*, 850 P.2d 1188, 1193 (Utah 1993) (explaining that insurance contracts induced by misrepresentation are "not void but only voidable"). On the other hand, the language immediately following states that TDC will take action to "rescind or cancel" the policy. Therefore, under the contract, a misrepresentation could plausibly produce any one of three distinct consequences: the policy could be void, such that legally speaking it never

existed; it could be merely voidable, in which case the insurer could retroactively nullify it through the process of rescission; or the policy could be cancelled, meaning that a legally valid contract once existed but has since been severed.

¶ 18 We do not see in this language the clear right of rescission that TDC wishes us to find. At best, the contract is ambiguous as to the consequences of misrepresentation, and we resolve such ambiguity against the drafter of the contract and in favor of maintaining insurance coverage. *LDS Hosp.*, 765 P.2d at 858. We therefore rely on the plain language of the "cancel or rescind" provision, which compels TDC to choose between cancellation or rescission rather than allowing it to do both. TDC chose to cancel the policy in 2000 and therefore waived its right to rescission. Because cancellation has only prospective effect, Drezga's policy was valid at the time of Athan's birth and TDC remains responsible for the malpractice judgment. Accordingly, we hold that the district court correctly granted summary judgment to the Appellees.[6]

## II. TDC CANNOT, AS A MATTER OF LAW, INVALIDATE THE INSURANCE POLICY DUE TO DREZGA'S ALLEGED FAILURE TO COOPERATE

 ¶ 19 TDC argues that the district court erred procedurally and substantively in

---

5. TDC also claims that the district court erred by failing to recognize its statutory right to rescind under Utah Code section 31A–21–303. The statute, TDC argues, does not indicate that rescission and cancellation are mutually exclusive. This is true, but irrelevant. Here, TDC is barred from rescission not by statute but by the language in a contract that TDC itself drafted. The same section of the statute states that "[a] policy may provide terms more favorable to insureds than this section requires." Utah Code Ann. § 31A–21–303(1)(b) (1991). Thus, while the law permits rescission in cases of misrepresentation, it in no way limits an insurance company's ability to tie itself to more restrictive terms, as TDC did here.

6. Appellees advance two additional arguments for affirming the district court, neither of which we reach today. First, the district court held that TDC's right of rescission was abrogated due to the involvement of "an innocent third party," i.e., a claimant who would be denied recovery for malpractice if the contract were retroactively invalidated. Because of our holding above, we

need not decide whether the district court's ruling on abrogation was correct. Second, Appellees argue that TDC failed in its duty to make a reasonable investigation into Drezga's insurability before offering the malpractice policy. As a result of that failure, Appellees contend that TDC cannot retain the right to rescind. There is support for this conclusion in our precedents. Specifically, in *State Farm Mutual Automobile Insurance Co. v. Wood*, we held that an insurer "cannot neglect its duty to make a reasonable investigation ... until after it learns of a probable claim and still retain its right to rescind." 25 Utah 2d 427, 483 P.2d 892, 893 (1971). However, the court then remanded for a factual determination as to whether the duty had been satisfied. *Id.* We face a similar situation here, as the record does not indicate whether, or to what extent, TDC investigated Drezga's insurability prior to the malpractice claim. But because our conclusions on the other issues are dispositive, we need not remand.

granting summary judgment on its noncooperation claim. Addressing the procedural matter first, TDC argues that this case must be remanded for a determination of whether Drezga's disappearance constitutes a failure to cooperate with the malpractice defense. The record reflects that TDC requested summary judgment on the noncooperation claim in 2000 but was denied on grounds that there were factual disputes regarding Drezga's alleged efforts to avoid the malpractice claim. When Appellees moved for summary judgment in 2008, the district court held that rescission was barred as a matter of law but did not directly address the noncooperation claim. TDC therefore argues that the noncooperation claim has not been disposed of and remains trial-worthy. We disagree; the 2008 district court order disposed of the noncooperation claim by implication and as a matter of law. "When a final disposition of a case is entered by a district court, any unresolved motions inconsistent with that disposition are deemed resolved by implication." *State v. Mullins*, 2005 UT 43, ¶ 8, 116 P.3d 374. That the district court was aware of the noncooperation claim and considered it disposed of is made clear in its minute entry denying TDC's motion for court clarification. The minute entry states that "the Court is satisfied that there is no legal or factual basis for the Court to alter its decision." Because the noncooperation claim reached final disposition at the district court, we may affirm on other grounds. *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("[An] appellate court may affirm . . . on any legal ground or theory apparent on the record . . . .") (quoting *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225).

¶ 20 Turning to the substance of the noncooperation claim, TDC contends that Drezga's disappearance releases it from the duty of paying the malpractice claim. This argument fails for two reasons. First, TDC has not met its burden to relieve itself of the responsibility for the malpractice judgment on grounds of noncooperation. Second, even if TDC could satisfy this burden, the contract does not allow TDC to retroactively deny coverage due to a failure to cooperate. Therefore, the district court did not err in granting summary judgment.

### A. TDC Failed to Meet Its Burden of Proof for Noncooperation

¶ 21 The district court, citing a federal case, *Cincinnati Insurance Co. v. Irvin*, 19 F.Supp.2d 906, 911 (S.D.Ind.1998), held that proof of noncooperation required TDC to show Drezga "willfully and intentionally breached the cooperation clause." Because the only available evidence suggests that Drezga's disappearance was motivated by family and financial difficulties rather than a desire to avoid cooperation with TDC, the district court held that this standard was not satisfied. The parties have argued at length over whether the "willful and intentional" standard used by the district court is appropriate. Utah law, however, does not demand that we resolve this issue. An insurer seeking to avoid coverage of a claim for reasons of noncooperation must establish two things: (1) that it used "reasonable diligence" to secure the insured's cooperation; and (2) that the noncooperation "substantially prejudiced" its ability to defend against the claim in question. *Montgomery v. Preferred Risk Mut. Ins. Co.*, 17 Utah 2d 333, 411 P.2d 488, 490 (1966). The burden for demonstrating reasonable diligence and substantial prejudice rests on the insurance company. *Peterson v. W. Cas. & Sur. Co.*, 19 Utah 2d 26, 425 P.2d 769, 770 (1967). Even if we assume that Drezga's disappearance constituted noncooperation, TDC has not satisfied either the reasonable diligence or substantial prejudice requirements and therefore cannot invalidate its insurance policy with Drezga.

### 1. TDC Has Not Shown That It Used Reasonable Diligence in Its Attempts to Find Drezga and Secure His Cooperation

¶ 22 An insurance company faces a conflict of interest when an insured party has disappeared. *Id.* at 771. On one hand, the insurance company has a duty to diligently seek cooperation from the insured party. But since failure to cooperate may allow the insurance company to avoid payment of claims, it is arguably against its interests to find a vanished party who is being sued. Therefore, an insurer must show that it

"used the same degree of diligence to secure the insured's cooperation that would have been exercised by a reasonable and prudent person where the cooperation of the insured would be to its advantage in protecting it against liability, rather than to relieve it therefrom." *Id.* In *Peterson,* the insured party was an itinerant restaurant worker who moved from Salt Lake City to another state shortly after an automobile accident that led to a lawsuit. Prior to trial, the insurance company received information that the insured party was in Miami, but it made no effort to contact him there. Under those circumstances, this court held that the insurance company failed to exercise reasonable diligence because it looked for the insured "everywhere except where they had reason to believe he was." *Id.* at 772.

¶ 23 In this case, the facts point strongly toward a lack of reasonable diligence. In *Peterson,* the insurance company searched diligently enough to locate the insured party in California before losing track of him. *Id.* at 770. In this case, however, the record shows that nearly all of the efforts to locate Drezga were made by Appellees, pursuant to their attempts to serve him with notice of the malpractice lawsuit. In contrast, TDC's own brief shows that its attempts to find Drezga consisted solely of phone calls and efforts to mail correspondence to addresses it knew were outdated. Further, TDC knew from the insurance application that Drezga attended medical school in Zagreb, Croatia. TDC also learned from the affidavit of Rick Rambo, a process server hired by Judd in her malpractice action, that Drezga's relatives believed him to be in Europe. Yet at no point during the last eleven years has TDC claimed to have acted on these tips in an attempt to locate Drezga abroad. We expect that a "reasonable and prudent" insurance company would have gone far beyond TDC's exceedingly limited efforts if it believed that finding a vanished party would relieve, rather than create, a $1.3 million liability.

¶ 24 Appellant argues that it made the same efforts to locate Drezga as Appellee Judd, who was held by the district court to have used "reasonable diligence" in her search for Drezga and was allowed to serve by publication. TDC therefore asks us to find that it satisfied the reasonable diligence standard as a matter of law. We decline, however, to mechanically apply the same standard to two different situations. The "reasonable and prudent" test used in *Peterson* makes clear that "reasonable diligence" is defined in a specific way when applied to cooperation clauses in insurance contracts. We therefore follow our precedent in *Peterson.* Because TDC has not satisfied the reasonable diligence standard, we hold that it cannot be excused from liability for reasons of noncooperation.

2. TDC Has Not Demonstrated That It was Substantially Prejudiced by Drezga's Unavailability

¶ 25 Even if Drezga's failure to cooperate was far more obvious than the record here suggests, Utah law also requires TDC to show that noncooperation put it at a material disadvantage in defending against the malpractice claim. *Montgomery,* 411 P.2d at 490. The burden rests on the insurance company to prove substantial prejudice. *Peterson,* 425 P.2d at 770. In *Montgomery,* the insured party disappeared prior to a trial to determine his liability for an automobile accident. We held that the absence or disappearance of the insured party alone does not establish a failure to cooperate. 411 P.2d at 490. The nonattendance of the insured at trial does not breach the cooperation clause "where his testimony would not have been of material aid or where, for this or other reasons, the insurer was not substantially prejudiced by his absence." *Id.*

¶ 26 TDC has not met its burden of showing substantial prejudice. Indeed, TDC's briefs do not suggest a single reason why the malpractice suit would have ended differently had Drezga been present. TDC's only support is an affidavit filed by the attorney who represented Drezga at the malpractice trial. The affidavit, which was filed several months before the trial began, simply asserts that it "would be extremely difficult and prejudicial ... to go to trial with an absentee defendant/physician." As proof of substantial prejudice, this is unpersuasive. The affidavit is self-serving and conclusory; it provides no

concrete insight as to how Drezga's presence would have been helpful given the overwhelming proof of malpractice that was present in this case.

¶ 27 In an attempt to buttress its argument, TDC points to a single case in which a Georgia appellate court held that a defendant's absence at trial is per se prejudicial because of the "intangible effect" that the absence of a defendant has on the minds of jury members. *H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co.*, 120 Ga. App. 800, 172 S.E.2d 355, 359 (1969). Even if the holding in *Akers* did not contradict established Utah law, we would not find it persuasive because the jury in the Drezga malpractice case played almost no role in deciding the outcome. Drezga's negligence was "so clearly evident" that the question of malpractice was settled by directed verdict in favor of the plaintiffs. *Judd v. Drezga*, 2004 UT 91, ¶ 8, 103 P.3d 135. On appeal, the appropriateness of the directed verdict was not questioned by Drezga's counsel. *Id.* Although the jury did decide on a judgment amount, that figure was later reduced in adherence to a statutory cap. Thus, even if the jury members had been influenced by Drezga's absence, there is very little possibility that TDC suffered substantial prejudice as a result. Therefore, TDC has failed to show substantial prejudice resulting from the alleged noncooperation.

*B. Even If TDC Met All of the Requirements for Noncooperation, It Is Contractually Barred from Avoiding Coverage on Those Grounds*

¶ 28 Finally, even if TDC met the noncooperation requirements, its contract with Drezga does not allow it to retroactively avoid coverage of the malpractice claim. Again, we examine the language of the contract and resolve any ambiguity in favor of the insured party. *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988).

¶ 29 The final sentence of the cooperation provision states, "Failure to cooperate with the Exchange in the defense of any *claim* is a breach of this policy and *will result in loss of coverage.*" (Second emphasis added). The phrase "will result in loss of coverage"

has two plausible meanings. It could be interpreted as having a limited prospective effect—in other words, a failure to cooperate would result in cancellation of the policy and removal of coverage for the future. Alternatively, it could be interpreted as having retroactive effect—allowing the insurance company to deny coverage for events that occurred even before the noncooperation. Because the phrase "loss of coverage" is capable of more than one reasonable interpretation, it is ambiguous.

¶ 30 We resolve any such ambiguity in favor of maintaining coverage. *Id.* We therefore strictly construe the cooperation provision to have a limited prospective effect and hold that TDC is contractually barred from avoiding coverage on grounds of Drezga's alleged failure to cooperate. Accordingly, the district court's grant of summary judgment in favor of Appellees is affirmed.

### III. THE ORDER REQUIRING TDC TO PAY DREZGA'S ATTORNEY FEES WAS PROPER IN LIGHT OF THE DISTRICT COURT'S INHERENT EQUITABLE AUTHORITY

¶ 31 The final issue is whether the district court can order TDC to pay the fees of Drezga's court-appointed counsel. Appellant argues that the district court lacked authority to issue the order. We hold that under the extraordinary circumstances present in this case the order to pay attorney fees fell within the inherent equitable authority of the court.

¶ 32 In *Burke v. Lewis*, we decided that the district court acted within its "inherent power" when it ordered the appointment of counsel for the absent Drezga. 2005 UT 44, ¶ 1, 122 P.3d 533. At the time of the *Burke* decision, however, we declined to address the separate issue of whether the district court could order TDC to pay for the court-appointed attorney. *Id.* ¶ 16 n. 3. As a general rule, Utah courts award attorney fees only to a prevailing party, and only when such action is permitted by either statute or contract. *Hughes v. Cafferty*, 2004 UT 22, ¶ 21, 89 P.3d 148. The absence of such authority, however, does not bar the

court from awarding attorney fees "when it deems it appropriate in the interests of justice and equity." *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). In *Stewart*, we described several categories of cases that may qualify for equitable awards of attorney fees. These include class action suits, cases involving action by a trustee that benefits a group of other trustees, suits under the "private attorney general" doctrine, and suits in which the nonprevailing party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." [7] *Id.* (citation omitted). Our precedents involving insurers who seek a declaration relieving them from liability have followed the same logic. Unless there is a showing that the insurance company "acted in bad faith or fraudulently or was stubbornly litigious," an equitable award of attorney fees has not been allowed, even when the insured party prevails. *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985); *see also Am. States Ins. Co. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042, 1044 (1971).

¶ 33 In this case, there is no applicable statute, and we have already held that TDC was not contractually required to pay for Drezga's defense of the complaint for declaratory relief. *Burke*, 2005 UT 44, ¶ 21, 122 P.3d 533. This case also does not fall into any of the previously recognized categories for an equitable award of attorney fees. *See Farmers Ins. Exch.*, 712 P.2d at 237.

¶ 34 Nonetheless, we believe this case does fall into an additional category in which an equitable award of attorney fees can be made under the court's inherent authority. First and foremost, it would defy equity to give the district courts the authority to appoint counsel for an absent client, but not the authority to ensure that the attorney is compensated for months or years of service. Drezga's attorney has worked on this case for more than eight years. Further, in accordance with our holdings above, Drezga prevails in this action. If we were to reverse the dis-

trict court's order, however, Drezga's attorney would receive no compensation of any kind for these successful efforts. Drezga, of course, is not available to render payment himself. The only other parties involved are TDC, on one side, and Judd and Athan on the other. It would be perverse to order Judd and Athan to pay Drezga's attorney fees after prevailing in a malpractice suit against him. TDC, as the insurer and the nonprevailing party, is the only logical choice when assigning equitable responsibility for fees under such unusual circumstances.

¶ 35 Drezga's absence, in conjunction with the presence of Judd and Athan as innocent third parties, provides additional justification for the district court's award of attorney fees. Indeed, it is not difficult to see how this deeply problematic situation could become even more troubling. In a hypothetical case, an injured party files a malpractice suit against a doctor who has disappeared. After being notified of the claim, the insurance company realizes that it has an easy way to relieve itself of liability. The insurer therefore files a complaint for declaratory relief against the absent doctor, its own insured. The doctor, unaware of the litigation, never responds to the complaint. Default judgment is eventually entered, relieving the insurer of any responsibility for defending the doctor or paying the malpractice claim. It is entirely possible that the action for declaratory relief could take place without the involvement, or even the knowledge, of the third party pursuing the malpractice claim.[8] That innocent third party would then find that it has been denied any opportunity to pursue its claims or defend its interests.

¶ 36 We therefore hold that where an insurer files a complaint for declaratory relief against its own insured, who is absent and unaware of the litigation, and where such relief would adversely affect the interests of an innocent third party, it is within the inher-

---

7. This decision does not implicate Utah Code Section 78B–5–825.5 (Supp.2009).

8. In this case, Judd and Athan became aware of TDC's action for declaratory relief because they were named as co-defendants by TDC. There is no reason, however, to expect that other insurers

will behave similarly when it would be in their interest to keep third parties in the dark. Indeed, TDC later attempted to have Judd and Athan removed as defendants, a motion that was never granted by the district court.

ent equitable authority of the court to both appoint counsel for the insured and to order that the insurer pay attorney fees for appointed counsel, if and when the insured prevails in the action. This authority will ensure that the interests of all parties are considered without significantly affecting the ability of an insurance company to argue for declaratory relief. Accordingly, we hold that the action taken by the district court was appropriate. We acknowledge TDC's argument that the district court essentially ordered it to pay Drezga's attorney fees "up front," i.e., before Drezga became the prevailing party. We disagree with TDC's characterization of the district court's order, but agree that an award of attorney fees prior to the insured prevailing in the action for declaratory relief would be inappropriate, as our holding makes clear. TDC's argument about "up front" fees is made irrelevant by our other holdings today, which clearly establish Drezga as the prevailing party.

¶ 37 We note that this new exception, while an extension of Utah law, provides for attorney fees under much narrower circumstances than is the case in numerous other jurisdictions. A minority of states routinely allow an insured party to recover attorney fees whenever it prevails in an action for declaratory relief, even when there is no finding that the insurer acted stubbornly or in bad faith. *See, e.g., Farm Bureau Mut. Ins. Co. v. Kurtenbach,* 265 Kan. 465, 961 P.2d 53, 64 (1998); *Litz v. State Farm Fire & Cas. Co.,* 346 Md. 217, 695 A.2d 566, 573 (1997); *Rubenstein v. Royal Ins. Co.,* 429 Mass. 355, 708 N.E.2d 639, 641 (1999). The minority bases its rule on the idea that individuals obtain insurance not merely to be protected from liability, but also to avoid the costs of litigation. When an insurer files an action for declaratory relief, the insured party is forced to litigate in order to receive the benefit that it paid premiums to gain in the first place. *Rubenstein,* 708 N.E.2d at 642. If no recovery of attorney fees is possible, then an insured party who prevails in the declaratory action can succeed in maintaining insurance coverage but still be worse off financially than it was before. *Id.* A rule this expansive, however, would run counter to established Utah law and could negatively affect an in-

surance company's ability to seek judicial resolution of legitimate controversies over coverage. *Farmers,* 712 P.2d at 237.

¶ 38 Fortunately, we need not reach so far today in order to secure a just result. Our holding does not overturn *Farmers.* The rule that attorney fees will not be available to a prevailing insured following an action for declaratory relief unless an insurer is found to have acted fraudulently, stubbornly or in bad faith remains undisturbed. Nor do we intend to abandon the caution that Utah courts have long shown regarding the awarding of attorney fees. Instead, our holding creates a narrow equitable exception applicable only in extraordinary circumstances. An award of attorney fees would not be appropriate if a nonindigent insured party is present to defend its own interests. In addition, the district court would not have the authority to award attorney fees in the absence of an innocent third party. Finally, the district court's authority to order the insurer to pay attorney fees does not exist until the insured party prevails in the action for declaratory relief. This rule, thus limited, best enables the district court to pursue an equitable result under the rare circumstances presented here.

## CONCLUSION

¶ 39 For the foregoing reasons, we affirm the district court's grant of summary judgment to Appellees. We hold that the insurance contract between TDC and Drezga prevents TDC from rescinding the policy after first taking action to cancel it. In addition, we hold that the contract prevents TDC from being relieved of liability due to Drezga's alleged failure to cooperate. Finally, we affirm the district court's order that TDC pay Drezga's attorney fees under the narrow exception created today.

¶ 40 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.