**2022 UT App 80**

# THE UTAH COURT OF APPEALS

KEVIN MUIR,
Appellant,
*v.*
CINCINNATI INSURANCE COMPANY,
Appellee.

Opinion
No. 20210289-CA
Filed June 24, 2022

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 200400938

Michael J. Petro, Leah Jordana Aston, Eva Marie
Brady, and Lindsey Brinton Harris, Attorneys for
Appellant

Vincent J. Velardo and Katia K. Conrad,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 After sustaining injuries in an automobile accident, Kevin Muir made a claim for underinsured motorist benefits, but his insurance company denied the claim because Muir had previously made fraudulent statements in an effort to obtain personal injury protection benefits related to the same accident. Muir sued the insurance company, and the district court dismissed Muir's lawsuit on summary judgment. Muir appeals, and we affirm.

BACKGROUND

¶2    Muir is listed as a "covered driver" under an auto insurance policy (the Policy) issued to him by Cincinnati Insurance Company (Cincinnati). The Policy provided several types of coverage, including liability, personal injury protection (PIP), uninsured/underinsured motorist (UIM), and collision.

¶3    In 2017, Muir was riding as a passenger in a vehicle that was rear-ended by another vehicle. Muir suffered injuries and received $25,000 in damages from each of the two drivers' insurance companies—amounts that represented the policy limits of those policies. Cincinnati also paid out PIP benefits to Muir under the Policy.

¶4    In connection with his PIP claim, Muir "stated that he was not working due to the injuries he sustained," but this statement was false: Muir was, in fact, "working as a self-employed truck driver." As a result of his false statement, Muir "was charged criminally with insurance fraud and entered 'no contest' pleas to reduced Class A misdemeanors."

¶5    Muir subsequently made a demand for UIM benefits under the Policy. However, Cincinnati denied coverage, relying on the Policy's fraud exclusion, which reads, "'We' do not provide coverage for any 'covered person' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy."

¶6    Following this denial, Muir sued Cincinnati for breach of contract and breach of the duty of good faith and fair dealing. The parties filed cross-motions for summary judgment on the question of whether the Policy's fraud exclusion precluded Muir's claim for UIM benefits.

¶7    The district court granted Cincinnati's motion and denied Muir's. Muir appeals.

ISSUE AND STANDARD OF REVIEW

¶8     Muir argues that the district court erred in granting Cincinnati's motion for summary judgment. "We review the district court's grant of summary judgment for correctness and accord no deference to its conclusions of law." *Gardiner v. Anderson*, 2018 UT App 167, ¶ 14, 436 P.3d 237 (quotation simplified).

ANALYSIS

¶9     Muir urges us to determine that the Policy's fraud exclusion is ambiguous and to construe the ambiguity in his favor. "An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). "An insurer may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Id.* at 1275 (quotation simplified). "If a policy is ambiguous, doubt is resolved against the insurer. However, if a policy is not ambiguous, no presumption in favor of the insured arises and the policy language is construed according to its usual and ordinary meaning." *Id.* at 1274 (quotation simplified).

¶10    "We construe insurance contracts by considering their meaning to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy." *Doctors' Co. v. Drezga*, 2009 UT 60, ¶ 12, 218 P.3d 598 (quotation simplified). "Ambiguity exists if a provision of a contract is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.* (quotation simplified). If the contract is capable of more than one reasonable interpretation, then it cannot be

interpreted as a matter of law. *Brady v. Park*, 2019 UT 16, ¶¶ 53–56, 445 P.3d 395. "However, policy terms are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Alf*, 850 P.2d at 1274–75.

¶11    As stated, the Policy contains a fraud exclusion that bars coverage when a claimant makes a fraudulent statement in connection with any accident or loss for which coverage is sought. Muir acknowledges that he made fraudulent statements in securing PIP benefits in connection with the accident in question but argues that those fraudulent statements should not negate his claim for UIM benefits. Muir asserts that the Policy's fraud exclusion is ambiguous because the Policy itself provides for multiple types of coverage. Because the word "coverage" is undefined, he asserts, the fraud exclusion could reasonably be read in two different ways: (1) it could be read to preclude all types of coverage under the Policy when fraud is committed, or (2) it could be "read so as to preclude just the specific type of coverage the insured was in fact seeking" at the time they "made the fraudulent misrepresentation."

¶12    However, we do not agree that the second interpretation is a reasonable reading of the Policy language. The fraud exclusion is contained in the "General Provisions" section of the Policy, not within any specific coverage provision, so the exclusion is at least potentially applicable to all types of coverage provided by the Policy. Moreover, the Policy explicitly excludes a "covered person" from receiving coverage if the covered person "made fraudulent statements or engaged in fraudulent conduct in connection with *any accident* or loss for which coverage is sought under [the Policy]." (Emphasis added.) The inclusion of the word "accident" in this clause links the misrepresentation to the accident in question, not just to the coverage sought, and makes Muir's preferred reading of the provision unreasonable, especially given Muir's admission that his "fraudulent conduct was indeed 'connected' to the accident" at issue.

¶13    The inclusion of the word "accident" also makes this case distinguishable from *Flores v. Allstate Insurance Co.*, 819 So. 2d 740 (Fla. 2002), on which Muir heavily relies. The fraud exclusion at issue in *Flores*, which the Florida Supreme Court determined to be ambiguous, read, "Allstate will not provide coverage for *any loss* which occurs in connection with any material misrepresentation, fraud, or concealment of material facts." *Id.* at 743 (quotation simplified). Since different types of coverage concern different types of losses, this language could reasonably be interpreted "as affecting coverage only in connection with the subsection or element of the claim to which the material misrepresentation or fraud relates." *Id.* at 750. On the other hand, since a single accident can encompass all types of coverage, the use of the word "accident" in the fraud exclusion at issue here makes a similar reading of the Policy unreasonable.

¶14    The accident for which Muir sought UIM coverage is the same accident for which he made fraudulent statements in seeking PIP coverage. And the Policy precludes coverage sought in connection with any accident for which a covered person has made fraudulent statements. We therefore agree with the district court's determination that Cincinnati was, as a matter of law, within its rights under the Policy to deny Muir's claim for UIM coverage.

## CONCLUSION

¶15    The district court correctly interpreted the Policy's fraud exclusion to preclude all benefits related to a particular accident when fraudulent statements were made in connection with that accident. Accordingly, the court did not err in granting Cincinnati's motion for summary judgment and denying Muir's. We therefore affirm.

_____